UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. *04-30020-MAP*

---

DAVID MAZZA,
        Plaintiff

vs.

VERIZON SICKNESS AND ACCIDENT
DISABILITY BENEFIT PLAN FOR
NEW ENGLAND ASSOCIATES[1], VERIZON
COMMUNICATIONS, INC., AETNA
CASUALTY AND LIFE INSURANCE
COMPANY,
        Defendants

---

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

## I.    INTRODUCTION

The Plaintiff, David Mazza, brings this complaint to redress numerous violations of state and federal law which stem from the refusal to provide him with certain benefits and monies due

---

[1] Pursuant to 29 U.S.C. 1132(a)(1)(B) and (d)(2) and Section 3.2.2 of the Verizon Sickness and Accident Disability Plan for New England Associates (which states in relevant part that "[t]he Plan is the proper named defendant for any lawsuit relating to a claim for benefits under the Plan..."), the Plan and its sponsor are named as Defendants herein. Nevertheless, in so designating the Plan and its sponsor as party Defendants, it is not the Plaintiff's intent, express or implied, to waive any claims against any or all of the following entities or organizations (whether legally recognized or not) which may have had involvement in the events which comprise the subject matter of the instant complaint and which are expressly enumerated as the "Plan Administrator and Plan Sponsor" in Section 3.1 of the Plan: Verizon's Bell Atlantic Corporate Employees' Benefits Committee; Verizon Claims Review Committee; and what has been designated as the "Benefits Administrator", "Claims Administrator", "Appeals Administrator", and "Final Appeals Administrator" in the above referenced Section 3.1 of the Plan.



him under a disability plan entitled the "Sickness and Accident Disability Plan for New England Associates" administered by his long time employer, the Defendant Verizon Communications, Inc., and by a Third Party Administrator, the Defendant Aetna Life and Casualty Insurance Company. More specifically, the various defendants have committed the following acts and/or omissions which are tantamount to violations of federal and state law, breaches of fiduciary duty, and other wrongful or illegal conduct:

    (a)   The Defendants have intentionally, willfully and knowingly violated Section 502 (a)(1)(B) of the Employee Retirement Income Security Act of 1974 as codified in 29 U.S.C. §1001 et. seq. (hereinafter referred to as "ERISA") by continually refusing to reimburse the Plaintiff for each of the benefits rightfully due to him pursuant to the above referenced Disability Plan;

    (b)   By continually refusing to reimburse the Plaintiff for each of the benefits due him under the Disability Plan, the Defendant Aetna has intentionally, willfully and knowingly committed various unfair claim settlement practices of the type specifically prohibited by M.G.L. c. 176D, §3(9)(d) and M.G.L. c. 176D, §3(9)(f).

## PARTIES

1. The Plaintiff David Mazza is a natural person who resides at

505 River Road, South Hadley, Hampshire County, Massachusetts.

2. The Defendant Verizon Sickness and Accident Disability Plan
for New England Associates and each of its subdivisions and
classifications as set forth more specifically in Footnote 1
(herinafter collectively referred to as the "Plan") is defined by
its own express terms as an "employee benefit plan within the
meaning of Section 3(1) of ERISA, and an accident and health plan
under Section 105 of the Internal Revenue Code of 1986...".

3. The Defendant Verizon Communications, Inc. (f/k/a Bell
Atlantic Corporation and/or its successors) sometimes referred to
as the "Sponsor" or "Sponsoring Company" of the Plan, is a
Delaware corporation which conducts and transacts business in
Massachusetts, has a principle place of business at 7900 Xexes
Avenue South, Minneapolis, Minnesota, and has numerous offices
throughout Massachusetts, including, upon information and belief,
offices at 101 Federal Street, Boston, Suffolk County,
Massachusetts, and 185 Franklin Street, Boston, Suffolk County,
Massachusetts.

4. The Defendant Aetna Life and Casualty Insurance Company
(hereinafter "Aetna"), is a Connecticut corporation which, upon
information and belief, has a principal place of business at 151
Farmington Avenue, Hartford, Connecticut, and which conducts and
transacts business in Massachusetts. At all times relevant hereto
the Defendant Aetna was a Third Party Administrator ("TPA") of

4

the Plan.

## JURISDICTION

5. The Plaintiff repeats and re-alleges each of the foregoing allegations and incorporates then by reference herein.

6. Jurisdiction is conferred upon this Honorable Court pursuant to 29 U.S.C. §1132(e) and (f), 28 U.S.C. §1331, and 28 U.S.C. §1367.

## FACTS/GENERAL ALLEGATIONS

7. The Plaintiff repeats and re-alleges each of the foregoing allegations and incorporates them by reference herein.

8. On or about August 1, 1979, the Plaintiff commenced employment with the Defendant Verizon.

9. At all times relevant to this complaint, the Plaintiff was an employee working as a service representative for the Defendant Verizon, a position which required that the Plaintiff engage in sitting and speaking on the telephone for prolonged periods of time, bending, twisting, and repetitive upper extremity movements involving administrative and/or computer duties.

10. Pursuant to his employment with the Defendant Verizon, the Plaintiff became enrolled in, was a member of, and at all times relevant was entitled to certain sickness or disability benefits available under the Verizon Sickness and Accident

5

Disability Benefit Plan for New England Associates ("Plan").

11. When he was approximately twenty eight years old, the Plaintiff injured his lower back in a skiing accident, with the pain and other commensurate symptoms becoming increasing worse over the ensuing years. Approximately seven years ago, the Plaintiff's pain, numbness, spasms, popping, tingling and other similar symptoms about his mid and lower back (with radiation to his extremities, hips, and buttocks) became significantly worse, and eventually crippling, chronic and debilitating. These symptoms were greatly exacerbated by the incidents and duties inherent in the Plaintiff's position as a service representative for the Defendant Verizon.

12. During the period described in the preceding paragraph, the Plaintiff treated with a variety of physicians in an effort to try to alleviate the pain and symptoms in his back and extremities.

13. More specifically, during the past several years, the Plaintiff has treated with (among others) the following physicians regarding his back condition: Robert E. Trump M.D. (his primary care physician); Demosthenes D. Dasco (a neurosurgeon); and Dr. Bentley A. Ogoke (a pain management/palliative care specialist). In addition, the Plaintiff has undergone numerous radiological studies in the affected areas, including x-rays, CT scans, MRI's, bone scans,

6

and myelograms.

14. As a result of the above described medical intervention, the following diagnoses were reached regarding the Plaintiff's back and surrounding areas: thoracic disk herniation at the T10-11 level; lumbar disk herniations at both the L4-5 and L5-S1 levels; lumbar disk protrusion at the at L3-4 level; lumbar facet degenerative changes; sacroiliitus; lumbar radioculopathy; and thoracic strain.

15. Aside from the above described back ailment, the Plaintiff's general health history at all times relevant hereto includes hypertension, dyspnea, a double hernia repair in or about 1995, a total ACL reconstruction in or about June 1996, nephrostomy in or about February 1998, three angioplasties and one stent from 1995 through 1998 culminating with quadruple bypass surgery in or about 1998. Moreover, at all times relevant hereto, the Plaintiff suffered from depression, anxiety, and sleep disturbance.

16. Based on the numerous injuries and ailments cited above, and upon the express advice of his physicians, the Plaintiff was forced to stop working for the Defendant Verizon on or about May 21, 2002. Shortly thereafter, he applied for a variety of sickness and disability benefits to which he was entitled pursuant to his membership in the Plan. To date, the Defendants have refused to honor their agreement with the

7

Plaintiff by repeatedly denying his application for sickness
and disability benefits and by denying him the benefits due him
under the Plan.

17. On or about December 9, 2002, the undersigned attorney sent
a formal demand letter to agents of the Defendant Aetna
requesting that the various Defendants comply with their
contractual and binding agreement with the Plaintiff and
provide him with each of the sickness and disability benefits
due him under the Plan. Attached to said letter were numerous
medical records indicating in unequivocal terms that the
Plaintiff was totally disabled from doing any type of work.
Among the medical records attached to the December 9, 2002
letter was a report from Dr. Bentley Ogoke dated November 7,
2002 which states in relevant part that "[the Plaintiff] cannot
work due to his physical impairments including the inability to
sit and stand for long periods of time in a sedentary
position". Also appended to counsel's December 9, 2002 letter
was a report from Dr. Robert E. Trump (the Plaintiff's primary
care physician) dated September 25, 2002 wherein he states as
follws: "[p]lease understand that I am not equivocating
here...Mr. Mazza is not presently able to work in any capacity
and I don't have any knowledge as to when that status may
change". A copy of the December 9, 2002 letter alluded to above
as well as the cited medical records are attached hereto as
**Exhibit A.**

8

18. As noted above, the Defendants Aetna and Verizon have since at least May 21, 2002 and continuing to the present utterly failed to honor their agreement and have refused to provide the Plaintiff with any of the sickness and disability benefits due him pursuant to the express provisions of the Plan. Interestingly, in continuously denying the Plaintiff's claim for benefits the Defendants have abused their discretion as fiduciaries by virtually ignoring the various medical records submitted in support of the Plaintiff's claim which state that he is totally disabled from employment. Rather, the Defendants' arbitrary and capricious decision to deny the Plaintiff's claim appears to be based upon a single purported conversation on November 7, 2002 between an agent of the Defendant Aetna (Dr. Claudia G. Hix) and a member of the staff (who was not a physician) of one of the Plaintiff's treating physicians (Dr. Ogoke). Curiously, there is no indication that, in trying to determine the Plaintiff's physical status, Dr. Hix even attempted to actually speak with the Plaintiff's doctor as opposed to a member of his office who was not qualified to dispense medical opinions. Also, it is noteworthy that Dr. Ogoke's office did not bother to respond to Dr. Hix's request that someone confirm the written medical summary and conclusions which Dr. Hix extrapolated from the alleged conversation referenced above, and in fact, it was on that same day of that conversation (11/7/02) that Dr. Ogoke generated a medical report based on his long time treatment of the

9

Plaintiff indicating that he was totally disabled from even
sedentary work. See, **Exhibit A**.

19. The Plaintiff further states that the Defendants Verizon and
Aetna both took part in the adjustment and/or administration of
his disability claim and in the decision to deny him the benefits
to which he is entitled under the Plan. Also, in filing this
complaint, the Plaintiff avers that he has exhausted the
Defendants' internal claim procedures and has exhausted any and
all administrative remedies available pursuant to the Plan.

### COUNT I-VIOLATIONS OF ERISA §502(a)(1)(B)-VERIZON

20. The Plaintiff repeats and re-alleges each of the foregoing
allegations and incorporates them by reference herein.

21. The Defendant Verizon's conduct in refusing to provide the
Plaintiff the benefits due him under the express terms of the
Plan was and continues to be unlawful, wrongful, in breach of
Verizon's obligation to provide said benefits, arbitrary,
capricious, an abuse of discretion, and violative of Section
502(a)(1)(B) of ERISA.

**WHEREFORE**, in that the Plaintiff has suffered harm and
incurred damages as a direct and proximate result of the
aforementioned conduct of the Defendant Verizon, he demands
judgment against Verizon in an amount to be determined by a jury,

10

along with monetary damages, costs, attorney's fees, interest, a
declaration or determination that the Plaintiff is disabled
within the meaning of the Plan, and any other relief which this
Honorable Court deems proper and just.


## COUNT II-VIOLATIONS OF ERISA §502(a)(1)(B)-AETNA

22. The Plaintiff repeats and re-alleges each of the foregoing
allegations and incorporates them by reference hereien.

23. The Defendant Aetna's conduct in refusing to provide the
Plaintiff with the benefits due him under the express terms of
the Plan was and continues to be unlawful, wrongful, in breach of
Aetna's obligation to provide said benefits, arbitrary,
capricious, an abuse of discretion, and violative of Section 502
(a)(1)(B) of ERISA.

    **WHEREFORE**, in that the Plaintiff has suffered harm and
incurred damages as a direct and proximate result of the
aforementioned conduct of the Defendant Aetna, he demands
judgment against Aetna in an amount to be determined by a jury,
along with monetary damages, costs, attorney's fees, interest, a
declaration or determination that the Plaintiff is disabled
within the meaning of the Plan, and any other relief which this
Honorable Court deems proper and just.

11

## COUNT III-VIOLATIONS OF M.G.L. CHAPTER 176D-AETNA

24. The Plaintiff repeats and re-alleges each of the foregoing allegations and incorporates them by reference herein.

25. At all times relevant, the Defendant Aetna was an insurance company and a  third party administrator and/or a party responsible for making claims decisions under the Plan, and in fact, by written communications an authorized agent of the Defendant Aetna (Rhonda Jackson) has on various occasions denied the Plaintiff's claim for benefits under the Plan.

26. On or about December 9, 2002, the undersigned Attorney for the Plaintiff sent a formal demand letter under M.G.L. c. 93A (along with attached medical reports) to Rhonda Jackson, an authorized agent of the Defendant Aetna, wherein in succinct terms the undersigned pointed out that these medical reports categorically indicated that the Plaintiff was totally disabled and demanding that the Defendant Aetna deem the Plaintiff totally disabled within the meaning of the Plan and immediately provide any and all benefits due the Plaintiff under the Plan. As noted above, a copy of said demand letter is appended hereto as **Exhibit A**. To date, the Defendant Aetna (which acknowledged receipt of the above described demand letter on or about December 11, 2002) has virtually ignored the Plaintiff's

12

medical records and failed to comply with his formal request
that he be deemed totally disabled and be provided with each of
the benefits due him under the Plan.

27. The aforesaid actions and/or omissions of the Defendant
Aetna were undertaken in direct violation of Chapter 176D,
Subsection §3(9)(d), which proscribes "[r]efusing to pay claims
without conducting a reasonable investigation based on all
available information".

28. The aforesaid actions and/or omissions of the Defendant
Aetna were also undertaken in direct violation of Chapter 176D,
Subsection §3 (9)(f), which proscribes "[f]ailing to effectuate
prompt, fair, and equitable settlements of claims in which
liability has become reasonably clear".

29. The above described violations of M.G.L. c. 176D also
amount to the employment by the Defendant Aetna of unfair and
deceptive practices which have been declared unlawful by the
provisions of the Consumer Protection Act, so-called, M.G.L. c.
93A, Sections 2 and 9, as amended by the regulations of the
Attorney General promulgated thereunder, and said violations of
Chapter 176D are also per se violations of the aforesaid
Chapter 93A.

30. The Defendant Aetna has thus far failed to tender a
reasonable offer of settlement of the Plaintiff's claim in

13

further violation of Chapters 93A and 176D, Section 9, said
violations being ongoing and continuous.

31. The employment by the Defendant Aetna of the above
described unfair and deceptive acts was and continues to be
willful and intentional.

32. As a direct and proximate result of the unfair and
deceptive acts employed by the Defendant Aetna as described
above, the Plaintiff has incurred pecuniary loss, severe and
permanent injury to body and mind, and severe emotional
distress, mental duress, and vexation such that he moves this
Honorable Court to enter judgment in his favor against the
Defendant Aetna, said judgment to include monetary damages,
double or treble damages, damages for pecuniary loss, interest,
any costs or fees associated with this suit, attorney's fees,
and any other relief which this court deems proper and just.

**THE PLAINTIFF ALSO HEREBY DEMANDS A TRIAL BY JURY ON ALL
ISSUES SO TRIABLE**

THE PLAINTIFF
DAVID MAZZA


By: Anthony G. Collins, Esquire
    121 State Street-Suite 102
    Springfield, MA 01103
    (413) 746-9003
    (413) 746-4114 (fax)
    BBO# 561180

Dated: 1/30/04