# EXHIBIT "A"

# ANTHONY G. COLLINS
*Attorney at Law*
101 STATE STREET, SUITE 609
SPRINGFIELD, MASSACHUSETTS 01103

(413) 746-9003
Fax (413) 746-4114
December 9, 2002

**RECEIVED**
**DEC 11 2002**
**APPEALS UNIT**

CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Rhonda Jackson
Aetna Life Insurance Co.
151 Farmington Avenue
Hartford, Ct.
06156

**Re: Client: David Mazza**
    **Employer: Verizon**
    **Your Member ID: 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**

Dear Ms. Jackson:

   Be advised that this office represents David Mazza in connection with his application for certain disability benefits offered by the Aetna Life Insurance Company (hereinafter "Aetna") as the administrator/underwriter of the Verizon Sickness and Accidental Disability Plan for New England Associates. In that Mr. Mazza has been aggrieved by certain unfair and deceptive insurance settlement practices undertaken by yourself and other duly authorized agents of Aetna in rejecting his application for disability benefits (and his appeal of same), be further advised that this is formal demand letter being sent to Aetna pursuant to the relevant provisions of M.G.L. Chapters 93A and 176D.

   By way of background, my client has been employed as a service representative at Verizon for the past twenty three years. For much of that period Mr. Mazza suffered with documented chronic and debilitating pain at the lumbar, sacral and thoracic spinal regions, a condition caused by (among other things) frank disc herniations at the T10-11, L3-4, L4-5, and L5-S1 levels with corresponding nerve impingement. Mr. Mazza's chronic pain has become progressively worse, and in May of this year it became so excruciating that he was virtually unable continue in his position at Verizon. It bears noting that while ostensibly sedentary, my client's position at Verizon entailed sitting and bending for protracted periods and repetitive motions

with respect to his upper extremities. Accordingly, Mr. Mazza's already chronic back pain and symptomatological problems were exacerbated to the point where he can no longer perform even the most negligible passive job functions, making him immediately eligible for the disability benefits offered through Aetna. As evidenced by the attached **Exhibit A** consisting of several recent medical reports, my client's inability to perform even rudimentary non-physical job functions is unequivocally supported by each of his treating physicians. It bears noting that the attached documents are the most recent disability reports generated by my client's primary treating physicians (as opposed to say, a physical therapist), and are based on both subjective and objective irrefutable medical findings.

    Based on the foregoing and doctor's advice, Mr. Mazza was forced to stop working on or about May 21, 2002, and as a result he applied for Sickness Disability benefits through Aetna. By letter dated November 11, 2002, Rhonda Jackson (a duly authorized agent of Aetna) averred that my client's application for disability certification and benefits was being denied, ostensibly because "[Aetna's] Nurse Case manager was unable to obtain objective clinical information from your treating physician that indicated you were unable to perform the material duties of your own occupation". What is noteworthy about the denial is that Aetna and/or Rhonda Jackson had in its possession the reports attached hereto as **Exhibit A** prior to the time the above cited November 11, 2002 denial letter was drafted. Hence, the only plausible explanation for Aetna's denial of benefits is that it virtually ignored the numerous medical reports in its possession wherein Mr. Mazza's primary treating physicians explicitly opined that was unable to perform even sedentary work much less the infinitely more taxing and physical "material duties of [his] own occupation". For example, Dr. Ogoke's report dated November 7, 2002 states in plain English that "David [Mazza] cannot work due to his physical impairments including the inability to sit and stand for long periods of time in a sedentary position". Likewise, David Mazza's primary care physician Dr. Robert E. Trump (who has treated Mr. Mazza for years) posits in his September 25, 2002 report as follows: "[p]lease understand that I am not equivocating here….Mr. Mazza is not presently able to work **in any capacity** and I don't have any knowledge as to when that status may change".(emphasis supplied).

    Massachusetts General Laws ("M.G.L."), Chapter 93A, Section 2, provides in relevant part that "unfair method[s] of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful". Although the statute does not expressly define an unfair or deceptive act or practice, it is incontrovertible that a violation of M.G.L. c. 176D, which applies to insurance claim settlement practices, is a per se violation of Chapter 93A. See e.g., **Dodd v. Commercial Union Insurance Co.**, 373 Mass. 72, 79 (1977). Section 9 of Chapter 176D states in pertinent part as follows:

> "[an] unfair claim settlement practice shall consist of any of the following acts or omissions:
>
> (d) Refusing to pay claims without conducting a reasonable investigation based on all available information:
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear:
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less that the amounts ultimately recovered in actions brought by such insureds"

In addition, while there are no express rules with regard to the reasonableness or content of an insurer's response to a demand for settlement, it is clear that the insurance company must act expeditiously and with "candor and fairness" in handling a claim. See, **Trempe v. Travelers Casualty and Surety Co.**, 20 Mass. App. Ct. 488, 455 (1985). Similarly, in **Hartford Casualty Ins. Co. v. New Hampshire Ins Co.**, 417 Mass. 115, 119 (1994), the court noted that good faith in the context of Chapter 176D settlement practices requires an insurance company to "exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be made".

In the instant case, Aetna, through the actions of its duly authorized agent Rhonda Jackson, has violated the above referenced sections of Chapter 176D, and by implication, Aetna's conduct is also violative of Chapter 93A. Specifically, it is respectfully submitted that Aetna's virtual ignorance of the compelling and voluminous medical evidence contained in David Mazza's demand for disability which clearly demonstrates that he is unable to work **in any capacity**, Aetna's continued insistence on additional information when the documentation in its possession warranted the immediate payment of disability benefits, and finally, **Aetna's disingenuous and illegal attempts to dispel**

or countervail the ample and categorical medical evidence in an effort to wrongfully deny Mr. Mazza's benefits are all conclusive proof that Aetna (through the actions or omissions of Rhonda Jackson) has refused to act with good faith or candor in evaluating this claim. These actions (or lack thereof) are also tantamount to violations of Section 9(3)(f) of Chapter 176D, which makes illegal the failure "to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear". Each of the above described actions, and especially Aetna's incomprehensible conduct in failing to recognize the reports from David Mazza's treating physicians, are also violative of Section 9(3)(d) and 9(3)(g) in that Aetna has refused to conduct a reasonable investigation of the claim here at issue and it appears to forcing my client to expend funds for counsel and/or to file suit to be collect disability benefits to which he is rightfully due.

   As a direct and proximate result of Aetna's unfair and deceptive practices, David Mazza has incurred monetary damages which include, but are not limited to, the entire arrearage he is owed under the Aetna disability plan retroactive to May 21, 2002. Assuming that the plan pays 60% of gross wages and that Mr. Mazza averaged $1000.00 in gross weekly wages, demand is hereby made from Aetna made in the amount of $15,600.00 to compensate my client for the arrearages owed as of the date of this letter. (NOTE: This amount is an approximation since the undersigned has neither Mr. Mazza's payroll records or a copy of the disability plan). But for the wrongful actions of Aetna, this is the amount which would reasonably compensate Mr. Mazza for the disability benefits which, by right, he should have been collecting since May 21, 2002. Also, Mr. Mazza hereby formally demands that he be certified as disabled retroactive to May 2002 and ongoing, and that Aetna immediately commence the payment of weekly disability benefits to my client. David Mazza will undoubtedly sustain additional monetary loss when or if he is forced to institute suit in order to be properly compensated for his injuries. Pursuant to Chapter 93A, you have thirty (30) days from the receipt of this letter to respond with a reasonable offer of settlement. Be further advised that the failure to make reasonably offer of settlement within thirty (30) days may entitle my client to double or treble damages, costs, and reasonable attorney's fees.

Sincerely,

Anthony G. Collins, Esq.

AGC:jab



# PIONEER VALLEY PAIN MANAGEMENT
## & Palliative Medicine Center, Inc.

125 Liberty Street ♦ Suite 100  
Springfield, MA 01103  
(413) 733-7515 ♦ FAX (413) 733-7371

**Bentley A. Ogoke, M.D.**  
*Medical Director*

November 7, 2002

David Mazza  
505 River Rd.  
S. Hadley, MA 01075

Attn: Claudia G. Hix, DO, MPH

To Whom It May Concern:

David Mazza has been seen and treated by me since June 12, 2002.

1. David has been on numerous medications including Percocet 5 mg, Skelaxin 400 mg, Elavil 25mg, Mobic 7.5 mg.
2. David has not reported pleuritic chest pain, however, his first evaluation he reported shortness of breath when he has back spasms.
3. The patient indicated he was out of work from the initial comprehensive evaluation on June 12, 2002 due to pain.
4. David cannot work due to his physical impairments including the inability to sit and stand for long periods of time in a sedentary position from Lumbar Herniation at L4-5, L5-S1 and L3-4 protrusion, Lumbar Facet Degenerative Disease, Sacroilitis, Lumbar Radiculopathy, and Thoracic Strain.

If you have any questions, please do not hesitate to call this office at 413-733-7515.

Sincerely,

Bentley A. Ogoke, M.D.



**RiverBend MEDICAL GROUP**

Administrative Office
232 Main Street
Agawam, MA 01001-1838
413-789-8000   Fax 413-789-4047

September 25, 2002                                                     0110

RE:  David Mazza
     #70-14-00-87
     D.O.B.  6/18/56

Topic:  Work Related Disability

To Whom It May Concern:

I have been asked by Mr. David Mazza to provide a letter concerning his current medical issues specifically his inability to return to the work place. I have taken the liberty of enclosing an accurate and fairly complete narrative discussion provided for disability insurance concerns as of June 10, 2002 for background information, although I assume that those reading this letter are in fact quite familiar with Mr. Mazza's current circumstances. Dave continues to have unpredictable intense crippling kind of back pain which can occur quite inexplicably and may present as a sort of spontaneous feeling of a popping nature with marked discomfort in the lower back with some radiation into buttocks and sometimes into the upper back. On some occasions incredibly intense spasm is associated with this. He is currently undergoing therapy in two different ways outside of our center, the first ~~involving~~ through a physical therapy group, HealthSouth, with recent information provided by the physical therapist at that site, Donna Desrocher, which I assume he has brought to your attention which confirms her clinical impression that he continues unable to work, improving somewhat via the use of physical therapy program, and her assertion that he needs to go for at least another four weeks at three times per week.

Independent of that activity, he has been working with a gentleman in pain management, Dr. Ogokee, who has been giving David a series of local injections which he says has provided some significant benefit, but unfortunately has not eradicated the unpredictable incredibly intense pain that will frequently befall him.

I should note that some of this improvement may be secondary to pharmacologic manipulation and not indeed physical improvement on Mr. Mazza's part. He is requiring exceptionally large doses of

| Agawam Office | Chicopee Office | Springfield Office | Westfield Office |
| --- | --- | --- | --- |
| 230 Main Street | 444 Montgomery Street | 305 Bicentennial Highway | Hampton Ponds Plaza |
| Agawam, MA 01001-1830 | Chicopee, MA 01020-1997 | Springfield, MA 01118-1967 | 1029 North Road (Rte 202) |
| 413-789-6800  Fax 413-789-5171 | 413-594-3111  Fax 413-598-7115 | 413-733-4101  Fax 413-796-6821 | Westfield, MA 01085-9711 |
| | | | 413-533-2900  Fax 413-536-45 9 |

Administrative Office
232 Main Street
Agawam, MA 01001-1838
413-789-8000   Fax 413-789-3047

September 25, 2002

0110 ...continue

narcotics delivered via topical route in the form of Fentanyl or Duragesic 75 microgram patches two at a time replaced every 72 hours with Oxycodone/APAP 5/325 or Percocet being given for "rescue". Even with this, there have been many days in the recent past where he was unable to leave his home due to intense pain and certainly could not have worked at a job of any type.

Hopefully this brief notation updating you on his current circumstances as well as reference to the summary note sent to his disability carrier and enclosed will be of benefit to you in your deliberations. Please understand that I am not equivocating here: Mr. Mazza is not presently able to work in any capacity and I don't have any knowledge as to when that status may change.

Very truly yours,

Robert E. Trump, M.D.

RET/bss28

**FILE COPY**

Agawam Office
230 Main Street
Agawam, MA 01001-1830
413-789-6800  Fax 413-789-5171

Chicopee Office
444 Montgomery Street
Chicopee, MA 01020-1997
413-594-3111  Fax 413-598-7115

Springfield Office
305 Bicentennial Highway
Springfield, MA 01118-1967
413-733-4101  Fax 413-796-6821

Westfield Office
Hampton Ponds Plaza
1029 North Road (Rte 202)
Westfield, MA 01085-9711
413-533-2900  Fax 413-536-4519