UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Western Division

| | |
|---|---|
| DAVID MAZZA,<br>                Plaintiff<br><br>vs.<br><br>AETNA CASUALTY AND LIFE INSURANCE COMPANY, et. al.<br>                Defendants. | CIVIL ACTION NO.<br>04-30020-MAP |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT, AETNA CASUALTY AND LIFE INSURANCE COMPANY'S[1]
## MOTION TO DISMISS

### I. INTRODUCTION

The defendant in this action, incorrectly named as Aetna Casualty and Life Insurance Company but which in actual fact should be Aetna Life Insurance Company ("Aetna")[2], requests that this Court dismiss the plaintiff's complaint against it in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The complaint fails to state any claim against this defendant upon which relief can be granted, for at least two substantive reasons. The plaintiff's complaint includes two counts against this defendant, one seeking the recovery of benefits under §502(a)(1)(B) of the Employee

---

[1] Aetna Casualty and Life Insurance Company, the named defendant in this action, actually does not exist, and the plaintiff's identification of the defendant is a misnomer. The actual entity to which this complaint is apparently targeted is Aetna Life Insurance Company, which, at one time, had provided certain claims administration services to the plaintiff's employer and that employer's benefit plans. See **Exhibit A** - Affidavit of Tammy M. Williams at ¶6.

[2] See fn. 1 *supra*.

Retirement Income Security Act of 1974 ("ERISA") and the second seeking recovery under Massachusetts General Laws chapters 93A and 176D. As discussed in detail below, the plaintiff cannot recover from Aetna on his claim under ERISA §502(a)(1)(B) as a matter of law because Aetna is no longer a claims administrator for the employee benefit plan under which the plaintiff seeks benefits, while at the same time the plaintiff cannot press his state statutory claim for unfair trade practices because such claims are clearly preempted as a matter of law in this circuit.

## II.    FACTS

### A.    Misnomer of the Defendant

As noted above, the plaintiff has not named the correct defendant in his complaint, and the proper defendant, at least in terms of its identity, is Aetna Life Insurance Company. Aetna Life Insurance Company, had, at one time but no longer, provided certain claims administration services to the plaintiff's employer and that employer's employee benefit plans. See **Exhibit A** - Affidavit of Tammy M. Williams at ¶6. The defendant is referred to in this memorandum simply as Aetna, without distinguishing between the actual name of the entity and the name given the defendant in the complaint, as it is not necessary for purposes of this motion to address any issues raised by the misnomer, such as whether the action should also be dismissed for misnomer or the plaintiff required to amend his pleadings to address this issue; such issues are irrelevant for present purposes because the grounds for dismissal addressed herein warrant dismissal of all claims against this defendant without regard to the plaintiff's failure to properly identify the targeted defendant. The reality that this defendant no longer serves as the administrator for the benefit plan in question and the fact that the state statutory claims are preempted preclude recovery by the plaintiff from Aetna regardless of how the plaintiff identified this defendant.

**B.     Facts Alleged in the Plaintiff's Complaint**

The facts, at least as relevant to Aetna's motion to dismiss, alleged by the plaintiff in his complaint are relatively minimal and certainly straightforward. Mr. Mazza alleges that he was an employee of defendant, Verizon Communications, Inc. ("Verizon"), since 1979. Complaint at ¶8. He alleges that he was a member of, and entitled to benefits under, the Verizon Sickness and Accident Disability Benefit Plan for New England Associates ("the Plan"). Id. at ¶10. Mr. Mazza alleges that a lower back injury, its accompanying physical symptoms and related medical treatment required him to "stop working for the defendant, Verizon, on or about May 21, 2002." Id. at ¶¶11-16. He alleges that he thereafter "applied for a variety of sickness and disability benefits to which he was entitled pursuant to his membership" in the Plan. Id. at ¶16. He alleges that the defendants have repeatedly denied his application for sickness and disability benefits allegedly available to him under the Plan. Id. Mr. Mazza specifically alleges "that the defendants, Verizon and Aetna both took part in the adjustment and/or administration of his disability claim and in the decision to deny him the benefits to which he is entitled under the Plan." Id. at ¶19.

The complaint contains three counts. Count I is alleged solely against Verizon. Count II alleges that Aetna has violated ERISA §502(a)(1)(B), and seeks recovery for this violation. Id. at ¶23. In Count III, the plaintiff charges Aetna with violations of Massachusetts General Laws chapter 93A and chapter 176D. He alleges that "Aetna was an insurance company and a third-party administrator and/or a party responsible for making claims decisions under the Plan" and at various times denied his claim for benefits. Id. at ¶25. Mr. Mazza alleges that Aetna's actions violated two specific subsections of Massachusetts General Laws chapter 176D §3(9), and alleges that these violations "amount to the employment by the defendant, Aetna, of unfair and deceptive practices

which have been declared unlawful by the provisions of the Consumer Protection Act, so called M.G.L. c.93A sections §2 and 9. . . and said violations of c. 176D are also *per se* violations of the aforesaid chapter 93A." Id. at ¶29. In this count, the plaintiff seeks recovery for the alleged violations by Aetna of these two Massachusetts statutes.

### C. Aetna Ceased Serving as the Administrator for the Verizon Plan at Issue in 2003, Before Commencement of the Present Action

Aetna had contracted with Verizon to provide claims administration services to Verizon with regard to certain employee benefit plans provided by Verizon to its employees, including the Verizon Sickness and Accident Disability Benefit Plan for New England Associates under which the plaintiff claims he was entitled to benefits. **Exhibit A** - Affidavit of Tammy M. Williams at ¶2.[3] The Verizon plan was self-funded and was not insured by Aetna. In 2003, however, Verizon elected to terminate Aetna's services as administrator and retain a different company to serve as the administrator of those plans. Id. at ¶2. Verizon and Aetna agreed that Aetna's role as administrator for those plans would terminate on March 31, 2003, and that all of Aetna's fiduciary rights and obligations relative to those plans would terminate as of that date. Id. at ¶2. This termination of all rights, obligations and duties of Aetna with regard to those plans is documented in a February 13, 2003 letter agreement executed by the parties, which is an exhibit to the affidavit of Tammy M. Williams, attached as **Exhibit A** to this memorandum. The letter agreement specifically provides that the termination date of Aetna's services to the plans is March 31, 2003, and that, *inter alia*, "Aetna and Verizon

---

[3]Lexington notes that the affidavit, and the facts therein, are not part of the plaintiff's complaint. However, as discussed *infra*, the fact of whether or not Aetna was actually the administrator of the Verizon Sickness and Accident Disability Benefit Plan for New England Associates when the plaintiff instituted this action is central to the plaintiff's claim against Aetna under ERISA §502(a)(1)(B), as he cannot recover from Aetna on that claim without showing that Aetna currently serves in that role. Accordingly, the facts addressed in the affidavit are central to the plaintiff's claims against Aetna, and as a result this Court may consider them on this motion to dismiss, even though they are not referenced in the plaintiff's complaint. See Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92, 94 (D. Mass. 2000).

specifically agree that the Administrative Services Contract and Aetna's fiduciary rights and obligations will terminate . . . as of the termination date." Id. at ¶4.[4]

### III. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST AETNA UPON WHICH RELIEF CAN BE GRANTED AND SHOULD, THEREFORE, BE DISMISSED IN ITS ENTIRETY.

#### A. The Plaintiff's Claim Under ERISA §502(a)(1)(B) Against This Defendant Fails As a Matter of Law Because Aetna Is Not the Administrator of the Verizon Sickness and Accident Disability Benefit Plan for New England Associates

In the leading decision on the question, the United States Court of Appeals for the Eight Circuit addressed the question of whether a terminated claims administrator, who was no longer the administrator of the employee benefit plan under which the plaintiff was seeking to recover benefits, could be sued under ERISA §502(a)(1)(B). In that case, Hall v. Lahco, Inc., 140 F.3d 1190 (8th Cir. 1998), the court found that a plaintiff seeking benefits under an employee benefit plan could not maintain a claim under ERISA §502(a)(1)(B) against a former administrator of the plan who was no longer the administrator at the time of suit. Hall at 1195. The court found that the specific items of relief that can be obtained under that section of ERISA cannot be recovered from a former plan administrator. Id. Noting that ERISA §502(a)(1)(B) allows only for a participant or beneficiary in the plan to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan, the court explained that a former administrator could not be found liable for any such relief, stating:

---

[4]The copy of the letter agreement attached to the affidavit has been redacted to remove discussion of retention bonuses to be paid to Aetna employees who serviced the Verizon plans, and who were due to be terminated after March 31, 2003, when Aetna would no longer be performing administrative services for Verizon. The bonuses addressed the need to retain staffing for the Verizon account after the notice by Verizon of termination of Aetna's services and before the date of termination of the services. The information has been redacted as confidential, proprietary business information that lacks any relevance to this matter in any event. If the Court wishes Aetna to file an unredacted version, it is willing to do so after an appropriate protective order, precluding disclosure to the extent possible of the redacted information, is entered.

> Benefits due under the terms of Hall's plan, the first category of relief available under this statute, can only be obtained against the plan itself . . . LAHCO, [the former administrator] is in no position where it is no longer associated with the plan, to pay out benefits to Hall, even if those benefits should have been paid sooner. Only the plan and the current plan administrator can pay out benefits to Hall. Furthermore, an injunction requiring payment of plan benefits must be directed at an entity capable of providing the relief requested, i.e, the plan administrator, not the plan itself. LAHCO, even if it once was the plan administrator for Hall's plan, is no longer in that capacity and thus cannot be enjoined to make payment of benefits from the plan. Similarly, relief "enforcing [Hall's] rights under the terms of the plan," the second category of relief under §502(a)(1)(B), also cannot be obtained from LAHCO, where LAHCO no longer administers the plan, if it ever did. The terms of Hall's plan would necessarily have to be enforced against the plan itself and the *present* administrator: only from them can Hall obtain proper subrogation and payment of benefits pursuant to the terms of his plan. Finally, where LAHCO is no longer the administrator of the plan, the last category of relief under §502(a)(1)(B), a "clarification of [Hall's] rights to *future* benefits under the terms of the plan," necessarily cannot be had against LAHCO, because LAHCO has nothing to do with Hall's future benefits.

Id. at 1196 (Internal citations omitted and emphasis supplied by court).

The United States Court of Appeals for the Eighth Circuit concluded that, since the items of relief available under this statutory section could not, under any circumstances, be recovered from a former administrator, the plaintiff's claim against the former administrator "pursuant to §502(a)(1)(B) simply is not 'redressable' against LAHCO, and Hall has no standing to pursue that claim." Id. The United States Court of Appeals, therefore, affirmed the district court's grant of summary judgment in favor of the former administrator on the plaintiff's claim for relief under ERISA §502(a)(1)(B). Id. Of some note, as is the case in the present matter, the former administrator sued in Hall under ERISA §502(a)(1)(B), had provided claims administration services to the employee benefit plan at the time of the plaintiff's claim for benefits, but was no longer serving as the administrator by the time the court was asked to award relief under that section of ERISA against the former administrator. Id. at 1192.

The present matter is, for all intents and purposes, identical to the situation considered by the court in Hall. As was the case in Hall, Aetna is a former administrator, who is not capable of

providing, and cannot be liable for, any of the items of relief that a plaintiff is allowed to recover under the literal terms of ERISA §502(a)(1)(B). As such, the plaintiff's claim under that section against Aetna fails to state a cause of action under which relief can be granted, and this cause of action against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as a result.

**B.      The Plaintiff's Claim Against Aetna Under Massachusetts General Laws Chapter 93A and Chapter 176D Is Preempted.**

As detailed above, Count III of the complaint is expressly and solely a claim against Aetna seeking recovery under two state statutes for Aetna's actions in denying the plaintiff's claim for benefits during the time period that Aetna was in fact the administrator of the employee benefit plan under which he was seeking benefits. By the plaintiff's own admission in the complaint, however, the benefits at issue were only available to him, if at all, as part of a benefit plan under which he alleges he was covered as an employee of Verizon. Complaint at ¶10. As such, the denial of benefits to him under that plan must be considered to have been part of the administration and provision of an employee welfare benefit plan and to therefore be governed solely by ERISA. E.g., Andrews-Clarke v. Lucent Technologies, Inc., 157 F.Supp.2d 93 (D. Mass. 2001). In that circumstance, "state law claims based upon the improper processing of a claim for benefits are preempted by ERISA since the existence and terms of the plan are critical to the plaintiff's claims." Andrews-Clarke at 104. The express preemption provision in the ERISA statute precludes "state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." Turner v. Fallon Community Health Plan, 127 F.3d 196, 199 (1st Cir. 1997).

The United States Court of Appeals for the First Circuit has reinforced that this preemption of state law claims applies to claims brought under Massachusetts General Laws chapter 93A and chapter 176D that are based on the administration of an employee benefit plan or on decisions as to

whether to grant benefits under such a plan. In Hotz v. Blue Cross & Blue Shield of Massachusetts, Inc., 292 F.3d 57 (2002), the United States Court of Appeals for the First Circuit affirmed the dismissal of the plaintiff's claim based on Massachusetts General Laws chapters 93A and 176D on the ground that it was preempted by ERISA. Hotz at 59-60. The Court reemphasized that this rule of preemption applies to claims brought under these exact statutes despite recent evolution in the case law construing the scope of ERISA preemption and the extent to which the so-called savings clause in ERISA prevents preemption of some statutory claims, explaining as follows:

> We turn, then, to the question of preemption. Hotz concedes that if what Blue Cross promises to provide is deemed a plan benefit, then her state law claim falls at least initially within 29 U.S.C. § 1144(a). That section broadly preempts any state law claim that "relate[s] to" an employee benefit plan, and it has been applied widely to bar state claims seeking damages for alleged breach of obligations pertaining to an ERISA plan. Hotz's answer is that section 1144(b)'s saving clause preserves her claim as one brought under a state law that "regulates insurance." The Supreme Court has used several formulas to delineate the scope of the saving clause. In a trilogy of cases, it has asked whether the state law regulates insurance under a "common-sense view" of the term and, separately, whether the practice falls within the phrase "business of insurance" for purposes of the McCarran-Ferguson Act based on three more technical factors. Much of the emphasis in the trilogy is on whether the claim or rule invoked by the plaintiff is exclusive to insurance regulation . . . The underlying notion is that a claim or rule directed only to insurance is one that "regulates insurance" while one that regulates insurance along with everything else is not within the quoted phrase. Exclusivity is an ambiguous label in this case. The substantive prohibition on delay in claim processing in chapter 176D is directed solely at the insurance industry, but the private action for multiple damages and attorney's fees claim brought by Hotz is created by chapter 93A, § 9, which applies to unfair commercial practices in any industry. Yet looking through form to substance, chapter 176D, § 3, invoked by Hotz, is (by its own terms) merely a specification of particular "unfair methods of competition and unfair or deceptive acts or practices"--which are banned in more general terms, and for all industries, in chapter 93A . . . On balance, our case seems closer to [the United States Supreme Court's decision in the case of] *Pilot Life*, where the Court held to be preempted a punitive damages tort claim for egregious nonpayment of benefits under an insurance policy. Under state law, such punitive damages were also available for egregious violations of contracts unrelated to insurance, just as chapter 93A is available for non-insurance unfair trade practices. In addition, the Court in *Pilot Life*--quite apart from the "common-sense view" and McCarran-Ferguson tests--emphasized that to allow punitive damages for failure to pay benefits was at odds with Congress's refusal to allow punitive damages for benefit claims under ERISA. On this last rationale, other circuits have in a number of cases held claims under various state statutes similar to Massachusetts' to be preempted by ERISA despite the saving clause. . . [U]nder current Supreme Court precedent, we feel bound by the similarity

- 8 -

of *Pilot Life* to our own case and by the close fit of its final rationale to Hotz's chapter 93A claim.

Id. at 59-60 (Internal citations omitted).

The plaintiff in the case at bar seeks recovery under these exact same statutes for acts by Aetna when it was administering an employee benefit plan that is subject to ERISA. As such, under controlling precedent in this Circuit, the claim is preempted and should be dismissed.

## IV. CONCLUSION

For the reasons detailed above, the plaintiff has failed to state any cause of action against this defendant upon which relief can be granted. Accordingly, this Court should dismiss the plaintiff's complaint in its entirety in accordance with Federal Rule of Civil Procedure 12(b)(6).

                                                Respectfully submitted,

                                                **Aetna Life Insurance Company**
                                                By its attorneys,

**Dated:** 4/13/04

                                                Stephen D. Rosenberg
                                                **McCormack & Epstein**
                                                One International Place - 7th Floor
                                                Boston, MA   02110
                                                Ph:  617/951-2929

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by depositing a copy hereof in the U.S. Mail, postage prepaid, addressed to:

> Anthony G. Collins, Esq.
> 121 State Street - Suite 102
> Springfield, MA   01103
> Ph: 413/746-9003
> *[Attorney for Plaintiff]*
>
> Amy D. Seifer, Esq.
> Lisa M. Birkdale, Esq.
> **Verizon Communications, Inc.**
> Legal Department
> 185 Franklin Street
> Boston, MA   02110-1585
> Ph: 617/743-5764
> *[Attorneys for Defendants
> Verizon New England, Inc. and
> Verizon Communications, Inc.]*
>
> Karen M. Wahle, Esq.
> **O'Melveny & Myers, LLP**
> 1625 Eye Street, NW
> Washington, D.C.   20006
> Ph: 202/383-5300
> *[Attorneys for Defendants]*

**DATED** this _11th_ day of _April_, 2004.

/s/ Stephen D. Rosenberg
Stephen D. Rosenberg
**McCormack & Epstein**
One International Place - 7th Floor
Boston, MA   02110
Ph: 617/951-2929
*[Attorney for Defendant, Aetna]*

61704.1

# Exhibit A

to

**Memorandum in Support of
Defendant, Aetna Casualty & Life Insurance Company's
Motion to Dismiss**

# UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Western Division

DAVID MAZZA,
               Plaintiff

vs.

AETNA CASUALTY AND LIFE
INSURANCE COMPANY, et. al.
               Defendants.

CIVIL ACTION NO.
04-30020-MAP

## AFFIDAVIT OF TAMMY M. WILLIAMS

1. I am an employee of Aetna Life Insurance Company and my current position is Claim Team Leader, Appeal Unit. I have personal knowledge of the facts set forth herein.

2. Prior to 2003, Aetna Life Insurance Company ("Aetna") had contracted with Verizon Communications, Inc. ("Verizon") to provide claims administration services to Verizon with regard to certain employee benefit plans provided by Verizon to its employees, including the Verizon Sickness and Accident Disability Benefit Plan for New England Associates. In 2003, however, Verizon elected to terminate Aetna's services as administrator and retain a different company to serve as the administrator of those plans. Verizon and Aetna agreed that Aetna's role as administrator for those plans would terminate on March 31, 2003, and that all of Aetna's fiduciary rights and obligations relative to those plans would terminate as of that date.

3. Attached to my affidavit, at **Exhibit 1**, is a true and accurate copy, with the exception of certain redactions detailed below, of a February 13, 2003 letter agreement between Aetna and Verizon that formally terminated Aetna's services as administrator of the Verizon Sickness and Accident Disability Benefit Plan for New England Associates effective March 31, 2003.

4. The letter agreement provides that the termination date of Aetna's services to Verizon and the Verizon Sickness and Accident Disability Benefit Plan for New England Associates is March 31, 2003, and that "Aetna and Verizon specifically agree that the Administrative

Services Contract and Aetna's fiduciary rights and obligations will terminate [at the latest with regard to any claims for benefits] as of the Termination Date."

5. The February 13, 2003 letter agreement has been redacted only to the extent of deleting discussion of retention bonuses and the terms for receiving retention bonuses that were to be paid to Aetna employees who serviced the Verizon plans, and who were due to be terminated from employment after March 31, 2003, when Aetna would no longer be performing administrative services for Verizon. The employees were dedicated employees, meaning their jobs were solely to service the Verizon account, and thus they would no longer be employed after the termination of Aetna's services under the contract with Verizon. The bonuses served the purposes of retaining staffing for the Verizon account after the notice by Verizon of termination of Aetna's services and up to the date of termination of the services.

6. There is no corporate entity known as Aetna Casualty and Life Insurance Company. The entity that contracted with Verizon to provide administration services for the Verizon Sickness and Accident Disability Benefit Plan for New England Associates was Aetna Life Insurance Company.

**SUBSCRIBED AND SWORN TO**, under the penalties for perjury, by the said Tammy M. Williams, this _____ day of April, 2004.

_____
**Tammy M. Williams**, Affiant

State of Connecticut ~~Commonwealth of Massachusetts~~ )
                                                        ) ss: Hartford
County of Hartford                                      )

Then personally appeared the above-named Tammy M. Williams, and acknowledged the execution of the foregoing Affidavit to be her voluntary act and deed, this _____ day of April, 2004.

My Commission Expires:

**JANET S. FOX**
**NOTARY PUBLIC**
~~My Commission Exp.~~ June 30, 2008
(Expiration Date)

_____, Notary Public
Janet S. Fox
(Printed Name)

61750.1

- 2 -

# Exhibit 1



Ann L. Bryan
Vice President
Aetna Life Insurance Company
151 Farmington Ave. RE52
Hartford, CT 06156

February 13, 2003

Ms. Janet M. Rohner
Verizon Communications, Inc.

Dear Janet:

RE: <u>TERMINATION OF DISABILITY MANAGEMENT PROGRAM ADMINISTRATIVE SERVICES CONTRACT</u>

Administrative Services Contract (Including a Statement of Work - Appendix to the Contract) # BQ 17404 Effective 1/1/1997 - Customer # 719987 (hereafter referred to as the "Contract").

Verizon Communications, Inc. has advised Aetna that the above noted Contract, has been awarded to other administrators and will be terminated. Verizon and Aetna agree that execution of this letter agreement constitutes formal notice from Verizon and agreement by Aetna that the Contract will terminate effective March 31, 2003 ("the Termination Date"). This letter sets forth both parties' agreement regarding the retention of dedicated Aetna personnel and the orderly transition of the plans from Aetna to Verizon's successor administrators.

The claims will transition from Aetna to the new vendors by March 31, 2003 for STD and LTD, including Third Party Medial Opinions and appeals, as set forth below. A group of key Aetna staff will remain at Aetna to provide and service consultation through April 30, 2003 as set forth below.

Verizon and Aetna agree to the following:

1

- 
  - 

- 

- 

- 

- 

-

- 

- 

- 

- 

## B. Transition of Administrative Services

1. Aetna will administer claims, including Short Term Disability, Long Term Disability, Third Party Medical Opinions and Appeal Claims, under Verizon's self-insured disability plan in accordance with the terms of the Administrative Services Contract and this letter through the Termination Date for the Administrative Services Contract, until completion of the obligations in this Letter Agreement, or earlier as designated below. Other than transition support as required under the Administrative Services Contract, completion of any obligations in this Letter Agreement and litigation support as provided below, Aetna's administrative and fiduciary obligations under the Contract will cease as of the Termination Date.

2. In accordance with Aetna's privacy policies, Aetna will transfer hard copy and electronic claim information to Verizon's successor administrators subject to the execution by the successor administrators of a hold harmless satisfactory to Aetna. In the absence of such hold harmless executed by each successor administrator, Aetna will transfer claim information to Verizon directly, subject to a satisfactory hold harmless. In the event that Aetna receives any claims or appeals following the Termination Date, Aetna will forward them immediately to the applicable successor administrator.

3

3. Aetna will transfer claim files, including appeal files, to Verizon's successor administrators, subject again to the hold harmless referenced above, during the following timeframes, which timeframes were requested and agreed upon by Verizon:

- Between 02/01/03 and 02/28/03 for active associate claims, with the majority of files transferred by 2/18/03. These files will be comprised of any hard copy material, hard copy TUMS printouts, and electronic Atlas notepad extracts.
- Between 03/03/03 and 03/31/03 for active management claims. These files will consist of any hard copy material, hard copy TUMS printouts, and electronic Atlas notepad extracts.
- Hard copy files closed in the last six (6) months period are to be sent to the successor administrators.
- Third Medical Opinion's will be transferred to Verizon's successor administrator on 3/31/03 or sooner if agreed upon by both Verizon and the successor administrator. These files will consist of hard copy files.
- Aetna will provide Verizon's successor administrators with electronic files of closed claims (STD and LTD) data that is readily reportable from Aetna's Claim Management systems (TUMS and Atlas), inclusive of all the pertinent historical information needed for claim and payment history from 10/1/2002 through 3/31/03.
- Aetna will provide Verizon with electronic files of closed claims (STD and LTD) data that is readily reportable from Aetna's Claim Management systems (TUMS and Atlas), inclusive of all the pertinent historical information needed for claim and payment history from 1/1/97 through 9/30/02.

4. Aetna will coordinate and cooperate with Verizon's successor administrators regarding the logistics of the file transfers. Aetna will complete review and decision of appeal files with appeal deadlines prior to the Termination Date unless the underlying claim file has already been transferred to the successor administrator in accordance with the above schedule. In that case, Aetna will forward the appeal to the successor administrator. Aetna will forward any appeal files with appeal deadlines that fall within four weeks after the Termination Date to the successor administrator at least 30 days prior to that appeal deadline.

5. Except as set forth below regarding litigation, Aetna and Verizon specifically agree that the Administrative Services Contract and Aetna's fiduciary rights and obligations will terminate as to each specific claim transferred to Verizon's successor administrators as of the earlier of a) the date the file leaves Aetna's premises to be shipped to the successor carrier or b) the Termination Date.

6. Aetna will continue to handle active or future litigation relating to any claims for which Aetna was the final decision-maker on appeal during the term of the Contract consistent with Aetna's handling of such litigation during the term of the Contract and consistent with the terms of the Contract and related Statement of Work. Specifically, Aetna will bear the cost and responsibility of vigorously defending against any active or future litigation relating to those

4

appeals. Verizon will be responsible for paying benefits due as a result of any claim or suit. Aetna will not be responsible for any damage awards, unless the award resulting from Aetna's negligence or misdeeds. Throughout the legal process, Aetna must consult with Verizon and keep Verizon abreast of the status of litigation. Verizon will be responsible for providing Aetna will all applicable claims files related to a litigated claim upon request from Aetna. Aetna's obligations to handle claim litigation pursuant this paragraph will commence only when Aetna has received applicable claim files from Verizon.

7. Aetna and Verizon agree that they will cooperate in good faith and use their best efforts to assure an orderly transition of the disability program administration to the successor administrators in accordance with standard industry practices. Aetna expects to apply its established work processes and professional conduct in effecting this transition, working in cooperation with the successor administrators. The exact details will be agreed on by Aetna and the successor administrators.

Please sign this letter in the space provided below to confirm your agreement to the foregoing, and return a signed copy to me. An additional copy is enclosed for your file. Aetna must receive this letter signed by Verizon no later than February 14, 2003.

Sincerely,

Agreed by Verizon Communications, Inc

*[signature]*     Director     3-4-03
Name     Title     Date

Aetna Life Insurance Company

5

| _____ | _____ | _____ |
| Ann L. Bryan | Vice President | February 7, 2003 |
| Name | Title | Date |