16

"misunderstood" or "misrepresented" his comments, and it will be recalled that his September 25, 2002 letter virtually pleads with Aetna not to misconstrue or ignore his disability assessment as evidenced by his statement "[p]lease understand I am not equivocating here....". Of course, as they did with the other medical conclusions finding Mr. Mazza totally disabled, Aetna chose to completely write off the opinion of Dr. Trump in favor of the knee jerk comments of a non-physician in Dr. Ogoke's office.

In a similar vein, Aetna and Verizon chose to deal with the overwhelming documentation finding David Mazza completely disabled by trying to qualify or vitiate the evidence because it was allegedly based on "subjective" information. See e.g. VER MAZ at pg. 3. This tact is totally fallacious since each of the disabling opinions were rendered only after months of personal examination, treatment, and review of objective radiological studies (along with subjective complaints). Aetna and Verizon's reliance on an ostensible lack of objective evidence is also patently unfair since a review of the Plan in its entirety fails to elicit a single passage mandating that a claimant must submit objective evidence in order to be deemed disabled, and in fact, the Plan does not speak at all to the type or quality of medical proof necessary to pass muster for purposes of the claims process.

A review of the record also evinces another pattern of conduct by Aetna and Verizon during their review and subsequent denials of the Plaintiff's disability claim. Specifically,

17

while Aetna's appeal decision was issued on or about November 8, 2002 and Verizon's on or about February 4, 2003, both entities disingenuously chose to give credence only to the earliest medical opinions of the Plaintiff's treating physicians. In other words, Aetna and Verizon purposely relied on medical assessments made at the outset of David Mazza's treatment which were stale and outdated by the time any meaningful claim decision had to be made. Common sense and fairness would dictate that the most weight be afforded to those opinions rendered closest in time to any claim decision and after Mr. Mazza's physicians had a significant period to carefully assess his progress or lack therefore. However, Aetna and Verizon seemed to selectively pick only those documents generated during the infancy of treatment which best served their quest to deny the Plaintiff's claim at all costs.

Aetna and the Verizon CRC also engaged in a number of other questionable and even underhanded tactics in their zeal to deny the subject disability claim, and the import of these tactics vis-a-vis the arbitrary and capricious standard is self-evident. In particular, aside from the transgressions discussed above, the record in the case at bar demonstrates that Aetna and Verizon never undertook or considered any type of independent medical evaluation or examination ("IME"), functional capacity evaluation, vocational assessment, or any similar exam or evaluation designed to assess the nature and extent of the Plaintiff's disability or, at a minimum, which would serve as a tenable medical counterpoint to the wealth of

18

uniform evidence disabling the Plaintiff. Furthermore, the record (and especially the internal notes generated by Aetna and Verizon) reveal that the claims review processes employed by the Defendants herein did not encompass or consider David Mazza's chronic pain, did not weigh or do a qualitative assessment of the various medical evidence submitted on behalf of the Plaintiff, nor did Aetna or Verizon take into account the cumulative effect of all of the Plaintiff's ailments, and instead their review was narrowly focused only on his spinal condition.

## ARGUMENT

Pursuant to the tenets of Fed. R. Civ. P. 56 (as previously set forth on Verizon's memorandum), the sole issue to be decided in the instant matter is whether Aetna and Verizon abused their discretion and/or acted arbitrarily and capriciously in reviewing and denying the Plaintiff's various applications for sickness disability benefits. The Plaintiff submits that a review of the relevant federal (and especially first circuit) precedent establishes many possible predicates for "arbitrary and capricious" behavior by benefits plan administrators and sponsors, and it is crucial to note that Aetna and Verizon has engaged in virtually **every** form of conduct disfavored or deemed invalid in these cases. For that reason, the Plaintiff would request that this Honorable Court allow his motion for summary judgment, or, as an alternative, the Plaintiff submits that there are genuine issues of material

19

fact which preclude the entry of summary judgment in favor of the Defendants.

As a starting point, Verizon correctly points out that the conduct of Aetna and Verizon is subject to summary review under the arbitrary and capricious standard, that is, the test is whether, based on a review of the aggregate evidence viewed in the light most favorable to the non-moving party, the sponsor or administrator's review and determination was "arbitrary, capricious, or an abuse of discretion". *Gannon v. Metropolitan Life Ins. Co.*, 360 F.3d 211, 212-213 (1st Cir. 2004). Furthermore, the administrator's decision must be reasoned and supported by substantial evidence. *Id.* at 213. Evidence is substantial if it is reasonably sufficient to support a conclusion. Although contrary or conflicting evidence does not, by itself, make a disability determination invalid, *Gannon* at 213, and as noted in the seminal case of *Black and Decker Disability Plan vs. Nord*, 538 U.S. 822, at 834 (2003), "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable [medical] evidence". See also, *Matias-Correa v. Pfizer, Inc.*, 345 F.3d 7, 12 (1st Cir. 2003). Additionally, the administrator has an absolute responsibility to weigh and carefully assess conflicting evidence. *Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 32 (1st Cir. 2001), citing *Guarino v. Metropolitan Life Insurance Co.*, 915 F. Supp. 435, 445 (D. Mass. 1995).

As noted above, a reviewing court must look at the totality

20

of evidence before the administrator, and whether an administrator acted arbitrarily or abused its discretion is a matter that must be decided on a case by case basis. See generally, *Karamshahi v. Northeast Utilities Service Co.*, 41 F. Supp.2d 101, 104-105 (D. Mass. 1999). Similarly, while an administrator's decision must be afforded some deference, the court's "review for reasonableness is just that-'a review <u>and not a rubber stamp</u>'". *Lopes v. Metropolitan Life Ins. Co.*, 332 F.3d 1, 5 (1st Cir. 2003)(emphasis added). In addition, general disability provisions identical to the type at issue here "should not be construed so literally that an individual must be utterly helpless to be considered disabled". *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998), quoting citations omitted).

As mentioned earlier, the relevant federal cases addressed a myriad of behaviors would could plausibly serve as the basis for a ruling that an administrator abused its discretion or acted in an arbitrary or capricious fashion. It cannot be said that all of the courts necessarily held that the conduct at issue was arbitrary, but the decisions and the circumstances upon which they were decided provide a good template for the sheer variety of conduct which has been disfavored or deemed invalid under ERISA. It is perhaps more imperative to point out again that, while each of the decisions cited below generally address one specific type of proscribed conduct, the actions of Aetna and Verizon in the case at bar are especially egregious

21

because they have managed to engage in every single form of conduct scrutinized and/or abrogated in the cases on point.

For example, the sentiments expressed in *Matias-Correa* and *Nord* against ignoring or arbitrarily refusing to credit a claimant's reliable medical evidence is germane since that is exactly what Aetna and Verizon did in the case at bar. As stated in more detail previously, the record is this case is replete with examples of Aetna and Verizon disregarding the opinions of those physicians and providers who had examined and treated the Plaintiff numerous times over a several month period. Again, Aetna and Verizon's solution was to ignore the existence of the reports which stated, without hesitation or equivocation, that David Mazza was totally disabled at and before the time that the pivotal appeal claims decision were made. The fact that these entities have now itemized almost all of the pertinent medical records in their memorandum is a pretextual attempt to make the court believe that they had actually considered this evidence while making their decision. Had they actually heeded the overwhelming information finding the Plaintiff disabled, then why on earth would they take such extreme measures as crediting the unqualified and impromptu opinion of a lay person (Allison St. Laurent) to the detriment of each of the findings of the trained physicians who had treated David Mazza for several months.

When the administrators had some difficulty sweeping these valid medical opinions under the proverbial claims process rug

22

(as when, for instance, Dr. Ogoke and Dr. Trump, perhaps hip to what was taking place, took great semantic pains to stress the absolute certainty of their disabling opinions), they did the next best thing and the very thing discredited in many of the afore-cited cases (e.g., Matias-Correa and Nord). That is, Verizon and Aetna took irreconcilable steps to try to disparage or refute the overwhelming and "otherwise reliable" medical evidence that David Mazza was completely disabled. For example, Aetna and Verizon showed a remarkably consistent penchant for carefully gleaning the record and, not by fortuity, placing credence in only the most outdated or stale medical reports. They also undertook Herculean efforts to try to qualify or undermine the wealth of evidence submitted by the Plaintiff by deigning it "subjective".

First, there is federal precedent which discusses both the chronological value of medical evidence as contemplated in a disability claim and the purported necessity that a disability claim need be supported by "objective" evidence. As for the issue of timely vs. stale supporting evidence, the court in *Jorstad v. Connecticut General Life Ins. Co.*, 844 F.Supp. 46, 58 (D. Mass. 1994), while ultimately ruling in favor of the administrator, did set forth dicta indicating (as per common sense) that the most germane medical evidence is that which addresses the claimant's condition at the point in time closest to when a disability decision is being made. Here, when necessary to uphold its untenable disability decisions, Aetna

23

and Verizon chose to purposely ignore the opinions generated by Dr. Ogoke and Dr. Trump (on 11/7/02 and 9/25/02 respectively) which were the most proximate in time to the disability determinations, and instead, harkened back to records from the origins of the Plaintiff's treatment before a fully realized, rational and contemplative disability opinion could be developed.

What's more, Aetna and Verizon's contention that David Mazza's medical documentation is somehow vitiated by the fact that it is "subjective" in nature fails on two scores. As an initial matter, there is nothing in the Plan at issue here (by which language the parties are bound) which mandates that a disability claim must be based upon objective evidence to pass muster, nor does the Plan contain language which expressly or impliedly ascribes more weight or credibility to "objective" as opposed to "subjective" information. In point of fact, in *Pollini v. Raytheon Disability Employee Trust*, 54 F.Supp. 54, 59 (D.Mass. 1999) the court noted in relevant part that the administrator's rejection of the claim at issue solely on the basis of a perceived lack of objective evidence was "troubling and questionable", especially where, as here, the plan did not define the type or quality of medical proof necessary to sustain a disability claim. See also, *House v. Paul Revere Life Insurance Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001). The *Pollini* court, *supra* at 59-60, further opined that the administrator's failure to consider or factor into its decision the opinion of

24

the claimant's doctor concerning pain was "unreasonable" and that the plan abused its discretion by finding that the Plaintiff was not "fully disabled" and entitled to benefits.

As in *Pollini*, the Plan pertaining to David Mazza did not specifically delineate the need for or assign a heightened status to so-called "objective" evidence, and even if it did, the fact remains that the opinions tendered by each of Mr. Mazza's physicians and treatment providers had as a foundation both subjective complaints and objective data based on actual examination, diagnostic testing, and/or a review of the extensive radiological studies. Finally, it is imperative to recall from *Pollini* that, like in this case, Verizon and Aetna's complete and utter failure to consider the copious portions of the Plaintiff's records which describe his well documented and chronic pain was and continues to be unreasonable, an abuse of discretion, and arbitrary and capricious.

In simple terms, Aetna and Verizon not only ignored or refused to credit the undeviating body of medical evidence proffered by the Plaintiff, but they also neglected or refused to "weigh" or assess with an open mind the available proof as required. Rather, what occurred here was a seemingly pre-ordained selection of those materials which, in their mind, the administrators felt would lend some credence to their fallacious position.

Of course, any notion of weighing conflicting information in

25

the case at bar is somewhat misplaced because the evidence here was uniformly in support of a finding that the Plaintiff was totally disabled. To that end, the cases cited by Verizon in its brief are highly probative, but in an inverse manner since the facts of each of those decisions are markedly distinguishable from the attendant circumstances of this claim. More to the point, in literally each of the cases relied upon by Verizon (mainly for the proposition that an administrator is not necessarily bound by the opinions of a claimant's treating physicians) there was an actual divergence of opinion regarding the claimant's condition. For example, in *Doyle v. Paul Revere Life Ins. Co.*, *Lopes v. Metropolitan Life Ins. Co.*, *Matias-Correa v. Pfizer, Inc.* [citations omitted] and each of the other decisions relied upon by Verizon (and several cited by the Plaintiff for that matter) there is a common factual difference which informs the degree to which Aetna and Verizon abused its discretion. Specifically, as a basis for their position that there existed "conflicting" medical information concerning a claimant, each of the plan administrators in the cited cases could point to one or more independent medical or functional evaluations or dissenting medical opinion which they had requested or were privy to. See e.g., *Vlass* at 29-31; (Plan's review of and decision on claim, deemed not to be of an arbitrary nature etc., took into consideration IME, surveillance evidence, vocational assessment, and the adverse opinions of claimant's own treating physician); *Matias-Correa*

26

at 11-12; (Administrator's denial decision was not arbitrary because it was predicated upon, among other factors, three separate Residual Functional Capacity evaluations, a Functional Capacity Evaluation, and other objective testing evidence): *Doyle* at 184-187; (Plan's decision deemed reasonable since it was based upon a wide assortment of supporting medical information, including opinions from IME, Physical Capacity Evaluation, and rehabilitation consultant each of which involved actual examinations of the claimant)[7].

It is obvious in the instant case that neither Aetna or Verizon engaged in an objective, equitable assessment of the voluminous evidence provided by David Mazza, and it is equally apparent that neither entity bothered to send the Plaintiff to even one IME or functional evaluation, never mind the series of objective examinations contemplated in the decisions alluded to by Verizon. Of course, it must again be stressed that there is not really any evidence in the instant record which requires "weighing" since all of the <u>credible</u> and seasonable medical information before Aetna and Verizon said one thing and one thing only; David Mazza is totally disabled and it is uncertain when (or if) that status will change. At a minimum, reasonable

---

[7] The Plaintiff is certainly not claiming that the law requires an administrator to automatically send claimants to IME-like evaluations in order to avoid liability. As this very court noted in *Karamshahi* at 104, whether a plan administrator abuses his discretion by not obtaining the opinion of a vocational expert "must be decided on a case by case basis". Of course, in contrast to the instant case, the overwhelming body of medical evidence in *Karamshahi* (both from "independent" and treating sources) uniformly and wholly supported the plan's decision. At a minimum, the facts presented in the relevant cases and the myriad of independent medical sources contemplated in those decisions seem to create a presupposition that prudent claims practice would require some type of independent medical or functional evaluation, especially as it relates to the abuse of discretion standard.

27

and fair claims practice would dictate that Aetna or Verizon expend the minimal effort to have a physician or expert of their choosing meet with David Mazza and do a real, honest to goodness, old fashioned physical examination. That minimal step was not taken here, and according to the record, neither Aetna or Verizon ever contemplated the need for a plausible medical opinion to countervail the unwavering documentation provided by Mr. Mazza.

In short, these entities took every opportunity to discredit each opinion of the practitioners who had spent months treating David Mazza without actually having a single shred of objective or plausible medical evidence by which to validate their decisions. In that way, the attendant circumstances here call to mind and are closely analogous to those presented in *House v. Paul Revere Life Ins. Co.*, *supra* at 1048[8], wherein the court (after rejecting the plan's claim that the Plaintiff's evidence was "subjective" and therefore invalid) held that the administrator needs "more than a scintilla" of evidence to uphold their decision, and based on that principle, the court found that the plan acted arbitrarily and capriciously since all the evidence it relied upon came from the claimant's own treating physicians and overwhelmingly supported his entitlement to benefits. The *House* court also opined that, if the plan was dissatisfied with the medical evidence derived solely from the Plaintiff's treating physician, it could have

---

[8] Although not a First Circuit decision, *House* has been cited as an authority in this circuit. See e.g., *Brigham v. Sun Life of Canada*, 317 F.3d 72, 85 (1st

28

(and, on the facts, should have) ordered an IME or similar evaluation. *Id.* at 1048.

Federal cases have also discussed another scenario where, as in the case at bar, an administrators conduct may be deemed arbitrary or unreasonable because they fail or refuse to consider the overall cumulative effect of multiple ailments. Thus it was that the court in *Chandler v. Raytheon Employees Disability Trust*, 53 F.Supp.2d 84, 90-91 (D.Mass. 1999), while it upheld the administrator's decision, did so (in part) because the plan had actually considered the combined effect of the claimant's arthritis, fibromyalgia, and obesity on her ability to work at any job. In this case, the record [e.g. VER MAZ at pg. 33] demonstrates that Aetna and Verizon possessed extensive medical background information concerning the Plaintiff, and the Plan was privy to the myriad of physical and mental illnesses which had beset David Mazza during a short period prior to the advent of the instant claim. (e.g. quadruple heart bypass surgery, nephrostomy, ACL reconstruction, double hernia, depression, anxiety etc.). Yet, consistent with their arbitrary conduct in every other aspect of the claim, the record demonstrates that Aetna and Verizon never even considered these various other afflictions when repeatedly deciding to deny the instant claim.

Finally, any profound summation of this matter would do best to recall the language of *Doyle v. Paul Revere Life Ins. Co.*, *supra* at 184, wherein the court suggested that the provisions

---

Cir. 2003).

29

of a plan should not be construed so literally "that an individual must be utterly helpless to be considered disabled". Although it can be presumed that the Doyle court was engaging in hyperbole when uttering those sentiments, they actually hit close to home in the case at bar. For instance, Dr. Trump's June 10, 2002 letter presciently stated that the Plaintiff's back pain was sometimes so unbearable that "he is not able to actually stand, having to be lying down and even crawling from place to place when taking heavier doses of narcotics". Well, apparently in the eyes of the functionaries at Verizon and Aetna, a human being like David Mazza, who gave 24 years of his life to Verizon, and whose debilitations have become so painful and pronounced that he is reduced to crawling around like an "utterly helpless" animal, is somehow deemed a non-disabled, fully functional employee. And you can bet that Verizon and Aetna will be damned if their myopic view of David Mazza's benefits claim is in any way impaired or blurred by all those pesky medical opinions which uniformly conclude that Mr. Mazza was (and is) fully disabled within the meaning of the plan.

In summary, therefore, the themes and patterns elicited from the record here at issue show Verizon and Aetna to be the walking, breathing embodiment of not just one, but every single form of disfavored conduct addressed by the legal precedents in this circuit. Consequently, it follows that the claims review and decision(s) undertaken by Aetna and/or Verizon were not reasonable, were not supported by substantial evidence, were

30

arbitrary and capricious, and were a clear abuse of discretion such that summary judgment should be granted in favor of the Plaintiff.

                THE PLAINTIFF
                DAVID MAZZA

      By: Anthony C. Collins, Esquire
          121 State Street-Suite 102
          Springfield, MA 01103
          (413) 746-9003
          (413) 746-4114 (fax)
          BBO# 561180

Dated: April 12, 2005