IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID MAZZA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Act. No. 04-30020-MAP |
| VERIZON SICKNESS AND ACCIDENT | ) |
| DISABILITY BENEFIT PLAN FOR | ) |
| NEW ENGLAND ASSOCIATES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

Defendants Verizon Sickness and Accident Disability Benefit Plan for New England
Associates (the "Plan") and Verizon Communications Inc. ("Verizon" or the "Company")
(collectively, the "Verizon Defendants") submit this reply memorandum in support of their
motion for summary judgment and opposition to plaintiff's motion for summary judgment.

## INTRODUCTION

The Verizon Defendants submitted their opening memorandum (Defendants'
Memorandum of Law in Support of Motion for Summary Judgment) ("Defs.' Br.") on March 31,
2005 [Dkt. #27], requesting judgment be entered in their favor in this action. Specifically, the
Verizon Defendants argued that plaintiff cannot properly bring a claim for benefits under ERISA
§ 502(a)(1)(B) against Verizon. The Verizon Defendants also argued that the denial of
plaintiff's claim for benefits under the Plan by the Verizon Claims Review Committee ("CRC")
was supported by substantial evidence in the administrative record and thus was not arbitrary and
capricious.

On April 12, 2005, plaintiff filed his Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. #29] and accompanying memorandum ("Pl.'s Br.") [Dkt. #30], which do little to refute the Verizon Defendants' arguments that they are entitled to judgment as a matter of law.  As an initial matter, plaintiff does not dispute that Verizon is an improper party in this action. Moreover, conveniently ignoring the opinions of his own treating physicians and several independent medical reviewers that he was capable of work in May 2002, plaintiff asserts that the medical evidence in the administrative record "uniformly" supports a finding of disability. (Pl.'s Br. at 25.)  In an ironic and futile attempt to discredit the opinions of his own treating physicians, plaintiff contends that these assessments were stale and outdated, notwithstanding the fact that such opinions were rendered during plaintiff's purported disability.

Plaintiff also asserts that the CRC failed to properly consider certain opinions by his doctors and physical therapist made in September and November 2002.  However, plaintiff's assertion is belied by evidence in the administrative record.  It was within the CRC's discretion to weigh conflicting evidence in the administrative record, and the CRC need not afford any deference to the opinions of plaintiff's doctors in September and November 2002.

Plaintiff also argues that the CRC's decision was arbitrary and capricious because it improperly required objective medical evidence to substantiate his claim of disability.  In addition, plaintiff contends that the CRC failed to properly conduct an independent medical evaluation.  Plaintiff's arguments, however, are contrary to First Circuit precedent.  Finally, plaintiff argues that the CRC's decision was arbitrary and capricious because it failed to consider a number of medical ailments in addition to his back pain, despite the fact that he did not submit any supporting medical evidence regarding these other ailments for the CRC's consideration.

Because all of plaintiff's arguments are devoid of merit as demonstrated below, the
Verizon Defendants are entitled to summary judgment.  Accordingly, the Court should deny
plaintiff's motion for summary judgment, and grant the Verizon Defendants' motion for
summary judgment and enter judgment in their favor.

## ARGUMENT

### I.    Plaintiff Did Not Dispute That Verizon is an Improper Defendant in a Claim for Benefits Under ERISA § 502(a)(1)(B)

As noted in the Verizon Defendants' opening brief (Defs.' Br. at 11-12), courts have
consistently held that a claim for benefits under ERISA § 502(a)(1)(B) must be brought against
the plan itself or the plan administrator.  *See, e.g., Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir.
1998).  Because it is undisputed that the Plan designates the Chairman of the Verizon Employee
Benefits Committee as the Plan Administrator (VER MAZ 125, 127) (Plan at §§ 2, 3.1) and the
CRC as the Appeals Administrator responsible for claims adjudication (VER MAZ 166-67)
(SPD at 23-24), Verizon is not a proper defendant in a claim for benefits under § 502(a)(1)(B).
In his brief, plaintiff does not address, let alone refute, the Verizon Defendants' argument that
the Company is not a proper defendant.  Indeed, plaintiff defined "Verizon" in his motion for
summary judgment as only the Plan.  (Pl.'s Mot. at 2.)   Accordingly, the Court should enter
judgment in favor of Verizon on this basis alone.

### II.   The CRC's Decision Was Not Arbitrary and Capricious and Should be Upheld

As discussed in detail in the Verizon Defendants' opening brief, the CRC's denial of
plaintiff's claim was based on substantial evidence in the administrative record and thus was not
arbitrary and capricious.[1]  The CRC found that two of plaintiff's treating physicians,

---

[1]    Plaintiff asserts throughout his brief that Aetna committed wrongdoing in the denial of
his claim for benefits, and that Aetna's conduct and determination of his claim should be

Dr. Demosthenes Dasco and Dr. Robert Trump, concluded that plaintiff was capable of work on

or around May 28, 2002, the commencement date of plaintiff's purported disability.[2]  (VER

MAZ 2) (CRC Denial Letter at 2.)  In addition, a physician's assistant, Ms. Allison St. Laurent,

also surmised that plaintiff was capable of work on November 7, 2002.  (VER MAZ 3) (CRC

Denial Letter at 3.)  Although Dr. Trump and another treating physician, Dr. Bentley Ogoke,

subsequently opined that plaintiff was unable to work on September 25, 2002 and November 7,

2002, respectively, the CRC found that there was insufficient evidence in the administrative

record to substantiate these opinions.  (VER MAZ 2-3) (CRC Denial Letter at 2-3.)  Likewise,

the CRC found that an opinion by Ms. Donna Durocher, plaintiff's physical therapist, that he was

unable to work could not be substantiated because she failed to provide any clinical evidence to

support her opinion.  *Id*. at 3.  The CRC's findings were supported by the opinions of two

physicians, Dr. Rukhsana Sadiqali and Dr. Claudia Hix, who conducted independent medical

reviews of plaintiff's medical file and concluded that the evidence did not support a finding of

disability.  (VER MAZ 8-9) (Sadiqali Report at 1-2); (VER MAZ 15) (Hix Report at 2); (VER

MAZ 17-18) (Hix Amended Report at 2-3.)

---

imputed to the Verizon Defendants.  (Pl.'s Br. at 4 n.3, 14 n.6.)  Despite plaintiff's contention to
the contrary, Aetna's denials are simply not at issue here.  First Circuit case law is clear that the
only relevant decision and conduct at issue in an ERISA § 502(a)(1)(B) claim are those of the
plan administrator.  *See Danca v. Private Health Care Sys.*, 185 F.3d 1, 6 (1st Cir. 1999) ("when
examining an ERISA § 502(a) claim, 'we must focus . . . in the usual case . . . on the
determinations of the final decisionmaker [not the third-party administrator hired to evaluate
medical basis of treatment requests]'"), quoting *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir.
1998).  *Hall v. LHACO, Inc.*, 140 F.3d 1190 (8th Cir. 1998), which plaintiff cites in support of
his argument (Pl.'s Br. at 4 n.3), is not to the contrary.  *Hall* merely held that because "[o]nly the
Plan and the current plan administrator can pay out benefits to [plaintiff]," a claim for benefits
under ERISA § 502(a)(1)(B) can only be brought against those entities.  *Id*. at 1196.  Nowhere in
*Hall* did the court address the issue of whether non-final and non-binding decisions of a third-
party administrator, such as Aetna here, can be imputed to the final claims fiduciary.

[2]     Plaintiff's first day of absence due to his alleged disability was May 21, 2002.  (VER
MAZ 48) (Aetna Notes at 25.)  Under the Plan, sickness disability benefits "begin on the eight
(8th) calendar day of absence on account of disability[.]"  (VER MAZ 130) (Plan at § 4.3.)

For the reasons discussed below, the Claims Review Committee's decision was not arbitrary and capricious, and should be upheld by this Court.

A.    The CRC Need Not Afford Any Special Deference
        to the Opinions of Plaintiff's Treating Physicians

In his brief, plaintiff asserts that the CRC's denial of his claim for benefits under the Plan was arbitrary and capricious because it "disregard[ed] the opinions of those physicians and providers who had examined and treated the Plaintiff numerous times over a several month period." (Pl.'s Br. at 21.)  Specifically, plaintiff alleges that the Verizon Defendants "ignore[d] the existence of the reports which stated, without hesitation or equivocation, that [plaintiff] was totally disabled . . . . The fact that [the Verizon Defendants] have now itemized almost all of the pertinent medical records in their memorandum is a pretextual attempt to make the [C]ourt believe that they had actually considered this evidence while making their decision."  *Id*.

Plaintiff's argument is baseless.  As an initial matter, the CRC's denial letter need not describe in detail every piece of medical evidence which it reviewed in adjudicating plaintiff's claim in order to demonstrate that it considered all of the evidence in the administrative record. In *Orndorf v. Paul Revere Life Ins. Co.*, No. 04-1520, 2005 U.S. App. LEXIS 6344, at *42 (1st Cir. Apr. 15, 2005), the First Circuit rejected the argument that a plan administrator's failure to describe medical evidence in the administrative record in its written denial of plaintiff's claim for benefits indicated that it ignored such information.  Specifically, the First Circuit stated, "We do not read the denial of benefits to have ignored significant material evidence submitted by [plaintiff].  The denial letter need not detail every bit of information in the record; it must have enough information to render the decision to deny benefits susceptible to judicial review."  *Id*.

Nevertheless, notwithstanding plaintiff's unfounded assertions to the contrary, the CRC's denial letter *did* explicitly describe the relevant medical evidence it considered and based its

decision upon, including, *inter alia*, Ms. Durocher's September 23, 2002 letter, Dr. Trump's

September 25, 2002 letter, and Dr. Ogoke's November 7, 2002 letter.  (VER MAZ 1-3) (CRC

Denial Letter at 1-3.)  Indeed, far from "ignor[ing] the existence" of these opinions, the CRC

directly addressed them in its denial letter.  With respect to Ms. Durocher's September 23, 2002

opinion, the CRC found that she did not provide any clinical evidence to support her opinion.

(VER MAZ 3) (CRC Denial Letter at 3.)  Indeed, aside from her one-paragraph handwritten

note, there is no other evidence in the administrative record from Ms. Durocher.[3]  With respect to

Dr. Trump's September 25, 2002 letter, the CRC acknowledged that plaintiff reported back pain

and that he was taking narcotics for relief.  However, the CRC found that Dr. Trump's opinion

that plaintiff was unable to work was based only on subjective information.  *Id*.  Likewise, the

CRC considered Dr. Ogoke's November 7, 2002 letter, which summarily stated that plaintiff

"cannot work due to his physical impairments including the inability to sit and stand for long

periods of time in a sedentary position" (VER MAZ 113) (Ogoke 11/7/02 Letter at 1), and

concluded that the evidence in the administrative record was insufficient to establish disability.

(VER MAZ 3) (CRC Denial Letter at 3.)

Despite plaintiff's contention that no "shred of credible evidence" exists to warrant the

denial of his claim (Pl.'s Br. at 13), there was substantial evidence in the administrative record to

support the CRC's decision.  As noted above, plaintiff's own treating physicians stated that

plaintiff was capable of work at the commencement of the purported disability period.

Specifically, in a May 28, 2002 letter, Dr. Dasco expressly concluded that plaintiff was "capable

of doing deskwork provided that he has the freedom of standing and sitting as needed."  (VER

---

[3]     Throughout his brief, plaintiff contends that it was improper for the CRC to consider the
opinion of Ms. St. Laurent because she was a non-physician "lay person" "unqualified" to render
an opinion with respect to plaintiff's condition.  (Pl.'s Br. at 15, 21.)  Yet, plaintiff relies upon
the opinion of Ms. Durocher, a non-physician, as evidence that he was disabled.  *Id*. at 11-12.

MAZ 84) (Dasco 5/28/02 Letter at 2.)  Dr. Dasco restated his opinion yet again in a June 5, 2002

telephone conversation with Aetna.  (VER MAZ 47-A) (Aetna Notes at 24.)  Similarly,

Dr. Trump stated that in a June 6, 2002 telephone conversation with Aetna that plaintiff was able

to work provided that he was allowed to change positions.  (VER MAZ 47) (Aetna Notes at 23.)

Dr. Trump again noted in a June 6, 2002 medical questionnaire that plaintiff "can return to work

[with] sit/stand arrangement[.]"  (VER MAZ 92) (Trump 6/6/02 Questionnaire at 1.)

Furthermore, after conducting independent medical reviews of plaintiff's medical files,

Dr. Sadiqali and Dr. Hix both concluded that there was insufficient evidence in the

administrative record to support a finding of disability.  (VER MAZ 8-9) (Sadiqali Report at 1-

2); (VER MAZ 15) (Hix Report at 2); (VER MAZ 17-18) (Hix Amended Report at 2-3.)  Indeed,

Dr. Hix emphasized that Dr. Dasco noted in his May 28, 2002 evaluation that plaintiff was able

to hunt, which "involves walking, stationary positions, sitting, laying on the ground or in a blind,

bending, stooping, squatting, reaching to shoulder height, and occasionally climbing.  By

extension, it could be expected that the patient would be able to sit at a desk with frequent

changes of position for some period of time during the workday."  (VER MAZ 15) (Hix Report

at 2.)

      In short, plaintiff's argument simply boils down to his belief that because the CRC did

not accept the opinions of his treating physicians and physical therapist in September and

November 2002 "at face value" (Pl.'s Br. at 14), it must have therefore ignored or disregarded

those opinions.  However, as emphasized in the Verizon Defendants' opening brief,

overwhelming precedent of the Supreme Court, the First Circuit, and this Court simply render

plaintiff's argument untenable.  In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834

(2003), the Supreme Court emphasized that "courts have no warrant to require administrators

automatically to accord special weight to the opinions of a claimant's physician; nor may courts

impose on plan administrators a discrete burden of explanation when they credit reliable

evidence that conflicts with a treating physician's evaluation." *Id*. Consistent with *Black &*

*Decker*, numerous decisions of the First Circuit and this Court have upheld denials of disability

benefits despite the opinions of treating physicians to the contrary. *See* Defs.' Br. at 18-19 & n.7

(listing numerous cases). As noted by the First Circuit in *Gannon v. Metro. Life Ins. Co.*, 360

F.3d 211 (1st Cir. 2004), it is solely within a plan administrator's "discretion to weigh . . .

competing evidence to determine whether [plaintiff] was 'disabled' . . . . [I]t is not [the court's]

role to evaluate how much weight an [administrator] should have accorded [conflicting medical

evidence] relative to the opinions of a claimant's own physicians." *Id*. at 216.

Plaintiff attempts to distinguish these cases by contending that they involved "an actual

divergence of opinion regarding the claimant's condition . . . . [E]ach of the plan administrators

in the cited cases could point to one or more independent medical or functional evaluations or

dissenting medical opinion which they had requested or were privy to." (Pl.'s Br. at 25.) In

contrast, plaintiff contends that the "evidence here [is] uniformly in support of a finding that the

Plaintiff was totally disabled." *Id*. However, as discussed above, it is clear that there is

evidence in the administrative record indicating that plaintiff was not disabled. Accordingly, it

was within the CRC's discretion to "interpret the Plan, weigh the evidence, and make its own

final determination." *Guarino v. Metro. Life Ins. Co.*, 915 F. Supp. 435, 445 (D. Mass. 1995). In

light of the opinions of plaintiff's own treating physicians at the time of his alleged disability in

May 2002, and the lack of medical evidence in the administrative record to substantiate the

opinions of plaintiff's doctors and physical therapist in September and November 2002 (as

further supported in Dr. Sadiqali and Dr. Hix's independent medical reviews), it was reasonable for the CRC to conclude that plaintiff was not disabled in May 2002.

B.    The CRC Properly Considered the Opinions of
        Plaintiff's Treating Physicians in May and June 2002

In a futile attempt to refute the opinions of Dr. Dasco and Dr. Trump made in May and June 2002, plaintiff contends that these opinions were "stale and outdated by the time any meaningful claim decision had to be made." (Pl.'s Br. at 17.) Plaintiff claims that it was "disingenuous[]" for the CRC to rely on such evidence because "[c]ommon sense and fairness would dictate that the most weight be afforded to those opinions rendered closest in time to any claim decision and after [plaintiff's] physicians had a significant period to carefully assess his progress or lack therefore." *Id*. However, it is plaintiff's argument that defies common sense. Plaintiff alleges that he left work on May 21, 2002 as a result of his disability and seeks sickness disability benefits commencing on that date. *See*, *e.g.*, Compl. ¶ 6 ("Plaintiff was forced to stop working for the Defendant Verizon on or about May 21, 2002. Shortly thereafter, he applied for a variety of sickness and disability benefits to which he was entitled pursuant to his membership in the Plan. To date, the Defendants have refused to honor their agreement"); (VER MAZ 111) (Collins 12/9/02 Letter at 4) ("[plaintiff] should have been collecting [sickness disability benefits] since May 21, 2002 . . . . [Plaintiff] formally demands that he be certified as disabled retroactive to May 2002"). Accordingly, plaintiff must demonstrate that he was disabled *at that time*. As such, far from being "stale and outdated," medical assessments by plaintiff's treating physicians at the time of his alleged disability are certainly relevant.[4] Indeed, "common sense"

_____

[4]     It is also disingenuous on the part of the plaintiff to assert that the opinions of Dr. Dasco and Dr. Trump that he was capable of work in May and June 2002 are "stale and outdated" when he devotes a number of pages in his brief to arguing that Dr. Dasco's May 28, 2002 letter and Dr. Trump's June 6 and June 10, 2002 letters support his claim of disability. (Pl.'s Br. at 6-8.)

would dictate that such evidence should be afforded *more* weight than those opinions rendered by plaintiff's doctors and physical therapist *four and six months after* the date of his alleged disability in May 2002.

Plaintiff's reliance on *Jorstad v. Connecticut Gen. Life Ins. Co.*, 844 F. Supp. 46 (D. Mass. 1994) (Pl.'s Br. at 22) is wholly misplaced, as that case actually supports the Verizon Defendants' position. In *Jorstad*, the plaintiff injured her back and received disability benefits until September 1986, at which point the plan administrator concluded that she was no longer disabled and terminated her disability benefits. The plan administrator informed plaintiff that she could request an appeal and submit additional medical information for its consideration. 844 F. Supp. at 51. Plaintiff failed to submit any evidence regarding her medical condition in 1986, but instead submitted evidence of her treatment and medical evaluation in 1988. In March 1989, the plan administrator issued its final denial of plaintiff's claim, concluding that there was no evidence to support a finding of disability in 1986. *Id*. at 53. This Court upheld the denial and rejected plaintiff's argument that the administrator failed to consider evidence of her back condition in 1988, reasoning that such evidence was irrelevant to her disability status in the fall of 1986, the time from which she sought disability benefits. *Id*. at 56. Likewise, the most relevant information in this case is the medical evidence of plaintiff's condition and ability to work in May 2002 – i.e., the onset of plaintiff's alleged disability and the date from which he seeks disability benefits – and not the date of the CRC's final determination in February 2003.

Furthermore, as noted in the Verizon Defendants' opening brief, to the extent that plaintiff may claim that he should at least be entitled to benefits effective September 25, 2002 (the date of the first opinion rendered by a treating physician that he was unable to work), he still would not be entitled to sickness disability benefits under the Plan. Section 6.1 of the Plan

provides that a participant does not have any "right or claim to any benefit or allowance after

discharge from service of the Employing Company, *unless the right to such benefit has accrued*

*prior to such discharge*."  (VER MAZ 135) (Plan at § 6.1) (emphasis added).  Plaintiff ceased

employment with the Company on September 8, 2002.  (VER MAZ 5) (CRC Agenda at 1.)

> C.    The CRC Properly Considered the Lack of Objective Evidence in the
> Administrative Record in its Determination of Plaintiff's Claim

In his brief, plaintiff argues that the CRC improperly rejected the opinions of his doctors

and physical therapist that he was disabled because they were not substantiated by objective

evidence.  Specifically, plaintiff contends that the Plan does not explicitly require that his claim

be supported by "objective" evidence.  (Pl.'s Br. at 23.)  However, the First Circuit has explicitly

held that a plan administrator may reasonably require that a claimant submit objective evidence

to support his claim for benefits despite the fact that the plan may not explicitly impose such a

requirement.  In *Brigham v. Sun Life of Can.*, 317 F.3d 72 (1st Cir. 2003), the First Circuit

rejected the plaintiff's argument that the plan administrator's reliance on the absence of objective

medical evidence in denying his claim was "improper because objective medical evidence was

not expressly required by his employee benefit plan."  *Id*. at 84.  The Court found that, in light of

subsequent differing opinions by plaintiff's treating physicians regarding his disability status (as

is the case here), it was reasonable for the administrator to require that plaintiff provide objective

medical evidence to substantiate his alleged disability.  *Id*.  The Court emphasized that "[a]s

claimant, [plaintiff] needed to demonstrate his entitlement to benefits, and he therefore had the

burden of substantiating the doctors' new diagnosis that he was incapable of performing fully

sedentary work."  *Id.*; *Cf. Downey v. Aetna Life Ins. Co./ U.S. Healthcare*, No. 02-10103-DPW,

2003 U.S. Dist. LEXIS 8150, at *46 (D. Mass. May 12, 2003) ("[M]edical opinions and

diagnoses must be substantiated in some way").

Similarly, in *Ivy v. Raytheon Employees Disability Trust*, 307 F. Supp. 2d 301 (D. Mass. 2004), this Court concluded that it was reasonable for the plan administrator to request objective evidence regarding plaintiff's functional limitations, and rejected plaintiff's argument that she was never informed of the requirement for objective medical evidence. *Id*. at 308. The Court emphasized that "[w]hen [plaintiff's] benefits were first terminated, [the plan administrator] informed her that she had failed to submit objective evidence of her functional limitations." *Id*. Accordingly, plaintiff was placed on notice that she was required to submit objective medical evidence to support her claim. *See also Crossman v. Raytheon Long Term Disability Plan*, No. 01-10928-RWZ, 2004 U.S. Dist. LEXIS 26480, at *8 (D. Mass. Oct. 19, 2004) (rejecting argument that denial of claim on lack of objective medical evidence was arbitrary and capricious because plaintiff was informed that she was required to submit such evidence). Likewise, plaintiff here cannot dispute that he was placed on notice that he needed to submit objective medical evidence to establish his disability, as the denial of his initial claim and first appeal indicated that he needed to provide objective evidence to support his claim. (VER MAZ 47-A) (Aetna Notes at 24) (denying initial claim "because we have not been provided with clinical information to establish that you are disabled"); (VER MAZ 13) (Aetna 11/8/02 Denial at 4) (denying first appeal because "[t]he clinical information does not support an inability to perform your sedentary occupation with restrictions and previously made accommodations by your employer . . . . There was no objective evidence provided to indicate that you were physically unable to perform sedentary work").

The cases cited by plaintiff, *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001) and *Pollini v. Raytheon Disability Employee Trust*, 54 F. Supp. 2d 54, 59 (D. Mass. 1999), are distinguishable. *House* is an Eighth Circuit decision and not binding on this Court.

*Pollini* did not hold that a plan administrator cannot require a claimant to submit objective evidence despite the absence of such an explicit requirement in the plan.  The plan administrator in that case, citing *Pokol v. E.I. Du Pont De Nemours*, 963 F. Supp. 1361, 1372 (D.N.J. 1997), argued that it reasonably interpreted the plan's requirement that a claimant provide "satisfactory medical evidence" to include objective medical evidence.[5]  54 F. Supp. 2d at 59.  The Court stated that "[t]here is no reason to quarrel with the *Pokol* holding."  *Id*.  Instead, the Court found the administrator's denial on the basis of a lack of objective evidence "troubling and questionable" in light of the administrative record, which was "replete with extensive medical evidence, both objective and subjective," of the plaintiff's disability.  *Id*.  In contrast, as discussed above, there is substantial evidence in the administrative record here to support the CRC's denial of plaintiff's claim for benefits under the Plan.

      D.    <u>The CRC Had No Obligation to Conduct an Independent Medical Evaluation</u>

In his brief, plaintiff contends that the CRC's failure to conduct an independent medical examination rendered its decision arbitrary and capricious.  (Pl.'s Br. at 26-27.)  Specifically, plaintiff asserts that "[a]t a minimum, reasonable and fair claims practice would dictate that [the Verizon Defendants] expend the minimal effort to have a physician or expert of their choosing meet with [plaintiff] and do a real, honest to goodness, old fashioned physical examination."  *Id*.  Plaintiff further contends that the "relevant [case law] and the myriad of independent medical sources contemplated in those decisions seem to create a presupposition that prudent claims practice would require some type of independent medical or functional evaluation, especially as

---

[5]      The Plan here confers broad discretion on the CRC to, *inter alia*, "Interpret the Plan[] based on [its] provisions and applicable law and make factual determinations about claims arising under the Plan[;] Determine whether a claimant is eligible for benefits[;] . . . Resolve any other matter under the Plan[] that is raised by a participant or a beneficiary, or that is identified by either the claims or appeals administrator."  (VER MAZ 167) (SPD at 24.)

it relates to the abuse of discretion standard." *Id*. at 26 n.7. However, the law of the First Circuit simply does not require a plan administrator to conduct an independent medical evaluation before denying a claim for disability benefits. *See, e.g.*, *Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67, 77 (1st Cir. 2005) (stating that plan administrator "was not acting in bad faith, or under an improper motivation, in relying on [treating physician's] conclusions to deny benefits to [plaintiff] without an independent medical evaluation"); *Brigham*, 317 F.3d at 85 (holding that plan administrator could rely on reports by plaintiff's treating physicians and an independent medical consultant in determining plaintiff's claim, and was not required to conduct independent medical evaluation). As noted above, it is plaintiff, not the Verizon Defendants, that has the burden of establishing his disability. *See Brigham*, 317 F.3d at 84 ("As claimant, [plaintiff] needed to demonstrate his entitlement to benefits, and he therefore had the burden of substantiating . . . that he was incapable of performing fully sedentary work").

Furthermore, it should be emphasized that the "voluminous evidence provided by [plaintiff]" (Pl.'s Br. at 26) was subjected to two independent medical reviews by Dr. Sadiqali and Dr. Hix. Both concluded that the medical evidence did not support a finding of disability. In his brief, plaintiff did not, and simply cannot, proffer any justifiable reason to disregard those opinions. Indeed, nowhere in plaintiff's brief does he even acknowledge the existence of Dr. Sadiqali's independent medical review and report, let alone refute her findings and conclusions. In light of these independent medical reviews of plaintiff's medical file, it was reasonable for the CRC to conclude that the medical evidence in the administrative record did not substantiate plaintiff's claim of disability.

E.     Plaintiff Failed to Submit Any Medical Evidence With Respect to
       Other Medical Conditions That He Allegedly Suffered in 1995-1998

Finally, plaintiff argues that the CRC's denial of his claim was arbitrary and capricious because it failed to consider the "cumulative effective" of a number of other medical ailments in addition to his back condition.  (Pl.'s Br. at 28.)  Specifically, plaintiff asserts that the CRC "possessed extensive medical background information concerning the Plaintiff, and the Plan was privy to the myriad of physical and mental illnesses which had beset [plaintiff] during a short period prior to the advent of the instant claim.  (e.g. quadruple heart bypass surgery, nephrostomy, ACL reconstruction, double hernia, depression, anxiety etc.)."  *Id*.  An examination of the administrative record, however, simply belies plaintiff's argument.  Contrary to plaintiff's assertion that the administrative record contained "extensive" information regarding these ailments, the only documentation from plaintiff's treating physicians in the administrative record even mentioning these ailments is Dr. Ogoke's June 12, 2002 initial examination of the plaintiff, in which he summarily noted, without more, the following:

PAST SURGICAL HISTORY:   Quadruple bypass in December of 1998, reconstructive surgery of the ACL in June of 1996, a double hernia operation in May of 1995, a nephrostomy in February of 1998, three angioplasties and one stent in 1995-1998.

. . .

REVIEW OF SYSTEMS:

. . .

Psychiatric:  The patient admits to depression and anxiety.  Sleep disturbance.

(VER MAZ 71-72) (Ogoke 6/12/02 Letter at 2-3.)

It is disingenuous on the part of plaintiff to argue that, on the one hand, opinions of his treating physicians in May and June 2002 are somehow "stale and outdated," while asserting that these ailments, which occurred in 1995-1998, "beset [plaintiff] during a *short period prior to the*

*advent of the instant claim.*"  (Pl.'s Br. at 28) (emphasis added).  Nevertheless, despite allegedly suffering from these conditions since 1995-1998, plaintiff worked until May 20, 2002.  There is no evidence in the administrative record that plaintiff left work on that day due in any part to these ailments.  Rather, it is clear that plaintiff left work because of his alleged back pain.  (VER MAZ 48) (Aetna Notes at 25.)

Dr. Ogoke did not note any abnormalities with respect to any of these conditions in his summary of his examination of the plaintiff.  (VER MAZ 72-73)  (Ogoke 6/12/02 Letter at 3-4.) Nor did Dr. Ogoke make any diagnosis with respect to any of these conditions.  (VER MAZ 73) (Ogoke 6/12/02 Letter at 4.)  Indeed, the CRC expressly noted in its denial letter that "[o]ffice visit notes dated June 12, 2002, from the office of Dr. Bentley Ogoke indicated a normal examination except for the neuro/musculoskeletal exam [i.e., concerning plaintiff's back condition].  Dr. Ogoke noted that [plaintiff's] sensory, motor, and power of upper extremities and lower extremities were within normal limits.  [Plaintiff's] concentration, judgment, coordination and balance were good."  (VER MAZ 2) (CRC Denial Letter at 2.)  Subsequent medical documentation from Dr. Ogoke made no mention of these ailments, nor do any of the documentation in the administrative record provided by Dr. Dasco, Dr. Trump, and Ms. Dusocher.  Tellingly, plaintiff fails to identify in his brief even one piece of medical evidence in the administrative record to support his claim that these ailments rendered him unable to work. Accordingly, because there is simply no evidence in the administrative record regarding these alleged medical conditions, plaintiff's contention that the CRC failed to properly consider the "cumulative effect" of these alleged ailments is baseless.

## CONCLUSION

For the foregoing reasons, the Verizon Defendants are entitled to judgment as a matter of law.  Accordingly, the Verizon Defendants respectfully request that the Court deny plaintiff's motion for summary judgment, and grant their motion for summary judgment and enter judgment in their favor.

Respectfully submitted on this 5th day of May, 2005:


  /s/ Karen M. Wahle
Karen M. Wahle
Khuong G. Phan
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel:  (202) 383-5300

Amy D. Seifer, BBO #550639
Lisa M. Birkdale, BBO #549663
Verizon Communications Inc.
Legal Department
185 Franklin Street
Boston, MA  02110-1585
Tel:  (617) 743-5764

Attorneys for Defendants
Verizon Communications Inc. and
Verizon Sickness and Accident Disability
Benefit Plan for New England Associates

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Defendants' Reply Memorandum in Support of Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment was electronically filed via CM/ECF for the United States District Court for the District of Massachusetts.  In addition, a copy of the foregoing document was served via first-class mail on this 5th day of May, 2005 on the following counsel of record:

Anthony G. Collins
121 State Street, Suite 102
Springfield, MA 01103
(413) 746-9003

Counsel for Plaintiff


   /s/ Karen M. Wahle

DC1:624495.3